Ofmiosopm Court, by
Judge Miles.
Under an execution in favor of M'Ghee, (the plain" tiff in error,) against Micajah Browning, the sheriff seized and sold a negro boy slave, as the property of Browning, and Elljs, the defendant in error, became the purchaser, at three months’’ credit, and executed his bond with security, to M’Ghee, for the price thereof, in the usual form. Shortly afterwards. James Brown, who claimed the slave as his, by title paramount to that of Browning, brought his action of detinue for the slave, against Ellis, and recovered. Ellis then exhibited this bill against both M’Ghee and Browning, with injunction against his bond for the purchase money, praying a perpetual injunction, which the court granted by a final decree; to reverse which,. M’Ghee has prosecuted this writ of error.
.There can be no doubt, from the testimony in the' cause, that the slave was the property of Brown, and that he had sent the slave to attend his daughter, Mrs. Browning,'home, when she was on a visit at his bjfeise, under a promise from her that he should be restored in two weeks, he, Brown, living in a distant county. While th? slave was at Browning’s the sheriff seized and *245 ®kl him, and M’Ghce, who had placed his execution in the hands of the officer, to pursue his legal remedy, gave no directions about the sale, and ha4*¿Mfeinterfe-ronce with it, arid denies that he knew of th^lkle until after it m&s over. ■ -
Thodcfond’t. ^ ;sejjay¡ ju equity, on üie ground ^fhluícbihae j,cen' <i¿char-god by the 5,ot unless ho was prupajqySb<£ ing taken,
^"heriff’s’ return that he bus col- *° plaintiff’s judgment, or of thu deferí (hint to that ’ ho ?et m-ido by a decree quenUy arcr-petual hurt» *|dn°rout an.'other excem.'. tion I’m-ü.
The case thus stated, present's the single question, whether a creditor or plaintiff in an execution is bound to refund to the purchaser the price of property sold under execution, when the title -proves defective; or, in other words, is a creditor, who barely pursues his legal remedy, without controlling in $my way, the acts of the sheriff, bound, by an implied warranty, to make good the title of goods or chattels sold under tHe tioil?
It is somewhat singular, that sheriffs and sales under execution should exist in our code of laws for so many centimes, and that wherever such sales exist, this ques-lion might, in the ordinary course of things, so frequently occur, and yet there should he so little said in the books on this subject; for, in the search made by this court, which is not very inconsiderable, we have not been able to find a single adjudicated case on the point. We have, thcrelore, been led to take it up measurably on principle, and examine and adjudicate as the reason of the case may guide us.
It would be hazarding too much, to say that all goods sold under execution, passed without any warranty of title, and that, in every instance, the purchaser runs the risk of title, and can have no redress for the loss of his money. On the contrary, we have no doubt that there is a responsibility somewhere, to which lie may resort, in case his title proves defective. If such liability ists, it must either be against the ci editor, (as the court below has decided in this case,) or against the debtor, whose debt is discharged by the sale, or against the sheriff, who seized and made the sale.
And first, what is the situation of the debtor? By his own act in creating the debt, and then refusing to discharge it, he is guilty of a wrong upon the credil or, which subjects him to legal process and the sentence the constituted authorities of his country, that he shall the debt. The sheriff, with the judicial process in his hand, seeks his estate, and perhaps acting honestly and innocently, takes, by mistake, the estate of another, and exposes it to sale. By the act of sale and the re *246 turn of tile officer, Ms debt is discharged, hia wrong against his creditor is purged, and the creditor is- es-topped %the return from again resorting to the judg-orient. To the judgment, and also the proceeding under the execution, both he and tile creditor arfe parties, and while that remains, in force, each is concluded by the return, as was decided by this court in the caso of Smith vs. Hornback, Reed and others * From this process and this mistaken act of the sheriff; the debtor receives a benefit direct; his debt is discharged, and the money of the purchaser is paid, laid out and expended for his benefit. It may, indeed, be said, that the proceedings against him are ininvitum, and that,-from that circumstance, his request that the money should be so laid out, cannot be presumed, and, therefore,' that an action for money paid, laid out and expended, could not be sustained. To this it may be responded, that if the promise cannot be presumed, so that assumpsit may be maintained, he is under a strong moral claim, which may be enforced in equity.
When we examine the case of the sheriff, his attitude of responsibility is still more strong. He is bound to ■“xecute process of arrest on the body, at his peril. Hence it is said, that if he apprehends a wrong person, even though he is induced to do so bj' the deceit and falsehood of the person so apprehended, yet an action lies against him. In like manner he is bound to execute a ■fieri facias correctly, and at his peril miist know that the property seized belongs to the debtor, if he takes that of a stranger, even though he is directed to do so, he is responsible to that stranger in an action of trespass, detinue or trover. He is the agent of the law, placed between debtor and 'creditor, undertaking to levy the creditor’s execution on nothing but the estate of the debtor! The purchaser, then, has the right to-presume that he has done his duty correctly, and to infer from the office, the execution and the sale, that he buys a good title,.and if he does not, that the sheriff has so far violated his duty, as to deceive him. The exhibition and sale of property by an individual, as his own, *247 is deemed suflicient in law to raise an implied warranty of title. Why, then, may not the acts of a sheriff, who vends property which he represents to the-world he has correctly seized and sold, be deemed eqfiqlly sufficient "to raise an implied warranty of title?
If we examine the Sks'e of the creditor, he is more remote from liability, in reason, than either the debtor or sheriff. Compelled by the refusal of the debtor to do him justice, he barely resorts to the means of coercion which the law furnishes him. Embarrassed and imbecile would be the remedy, if he is construed to warrant all the estate of the debtor, which the officer of the law shall seize and sell. The return of the e’xecutjpn satisfied, extinguishes and bars the judgment. In this case, he must be without further remedy; H'is judgment-is discharged at law. He is compelled to take the bond of the purchaser in lieu of his judgment, and the return of such salo and bond taken, releases the debtor; and a perpetual injunction in chancery has, in this case, precluded him from using that bond. The decree of the chancellor has not, and cannot operate upon the record of the suit at common law, so as to remove this b@r, and again let loose his execution. The two records are separate, and the power of the two courts distinct. It has been decided by this court, in the case of Banks vs. Shain, (Littell’s S. C. 451,) that the chancellor cannot set aside a verdict and judgment at common law, fi,ut must operate upon the fears or the interest of the adverse party, by proceedings in personam-, to pror cure his assent to the new trial. Nor can he have more power to reach the return of the sheriff, in a common .law record, and wipe out the bar, and set (he execution again into operation. ' It is true, in this state, the powers of a 'court of law and chancery are blended in the same person, entered on the same record, and perform - ed on the same juridical days; but yet the powers, to other purposes, must be kept as separate as if the tribunals were distinct and separate; and no more authority exists in the chancellor to deface the record of a common law suit, than if that record belonged to a different court, and was in the keeping of another officer. Hence, a perpetual injunction leaves the common law record in force; but, for equitable reasons, ties up the hands of the plaintiff in that court, from carrying it into effect, under pain of personal punishment.
*248 ft is said, however, that the consideration of the sale bond given by the creditor,' has utterly failed, and this gives him a right to relief. It is true, a failure of consideration frequently gives right to relief; but fhat relief ought to be granied againstthe party from whom the consideration moved. If the creditor is allowed to collect and receive the amount of this bond, what did he give for it? Certainly not the slave. He receives it as in lieu of his original debt, and as the consideration due to him for a counter consideration, which had previously passed from him to the debtor. For this bond he has surrendered his judgment and released the demand against the debtor, through the instrumentality of the sheriff, who has taken this bond to the creditor, and the law has compelled him to take it. He never had the negro, and never sold him, and therefore the purchaser, if the consideration has failed, must look to those who passed to him that deceptive consideration, or those for whose benefit it was passed, and not to him from whom it did not come.
Although we have remarked the silence of the English books on this subject, which might be expected frequently to occur, yet" this silence is not entire, and one authority is found which supports this opinion. Dalton, in his Office of Sheriff, page 116, after'treating of the high responsibilities of the sheriff when executing a fieri facias, adds, “ if the sheriff shall return his writ, that he hath taken so much goods of the defendant’s, and that he hath (leñarlos illos paratos ad reddendum, to the plaintiff,” and the value be recovered of him by a stranger, “then,” adds the auihor, “ is the sheriff at a, double mischief; for although the value of the goods lie recovered against the sheriff or his officer, by the owner of the goods, yet the plaintiff in the action may, within the year after execution done, have a scire facias upon the judgment and return made by the sheriff, and thereby shall compel the sheriff to bring the-money into court; and after the year, the plaintiff may have an action of debt against the sheriff, for it, if he he not otherwise ordered by the court where the judgment is depending.”
If this authority is tobe taken as law, it is decisive of this question, and clearly shows that although the value of the goods sold under a fieri facias, be recovered of the plaintiff, yet the right of the' plaintiff to the *249 money is not thereby impaired. If thp contrary doctrine be true,"that the creditor is responsible forísthe validity of the title, he could not be entitled to the money, ajfter that title had failed by a suit against the sheriff, which is the ¡jase put by the author.
Nor do we conceive that the citcumsfance of^s'ale bond being taken, and the money being dn transüú, bnd not in fact paid, varies the question, 'ño bond of the purchaser, and the return of the officer that he has sold and taken such bond, completely discharge the judgment and stand in lieu of it, and as between the creditor, is as complete a discharge, while it remains in force, as the return that the money was made and'ready to render.
For these reasons, the decree of the court below is deemed erroneous, and must be reversed. But Browning, the debtor, is now before the court, and the question arises, what redress shall be given against him?
We have said that the defendant in error has a claim in conscience against him, and the only doubt whether a decree ought or ought not to be rendered against him, is, because it may- be contended that the remedy is at fhw. If any remedy exists at law, it cannot be an action on an implied warranty of title; for no warranty can be presumed to be made by him, of the title of the .slave, when he denies that he was instrumental in the sale, or that he ever represented the slave to be his, and there is no proof that he did. In such case, his bare defalcation in permitting a judgment to exist against Iñm unpaid, is the only part he has taken, and this agency is too remote to raise an implied warranty of title. The same may be said of the action of implied as-sumpsit for money paid, laid out and expended for his use. THie, a promise in such action will be implied, frequently, when the defendant has always resisted every acknowledgment that the money belongs to the plaintiff. But the true principle on which fthe action is based, in such cases, is, that the money was expended for the benefit of the defendant, through his imme-_ diate instrumentality; and here the instrumentality employed by Browning, was his bare failure in the nonpayment of his debt, which is too remote to become the base of an implied assumpsit, whatever his case might he, had he been shown to bo instrumental *250 itl causing the property of a stranger to be soid in pay* nief^ °f hi-3 debt. ,
Éut still it,would be iniquity, to say that be should avail himself of this advantage, and leave the innocent purchase^ a loser; and it is in cases where right exists without remedy at law, that a court of equity applies its helping hapd. That court, when any legal advantage is gained by one, which he may keep, and that advantage has resulted to him by operation oflaw, in lieu of a former claim or advantage over a third person, will relieve the case by applying the doctrine of substitution, and clothe him who is the loser, for the benefit of him who has gained, with the rights which such gainer Erst had against such third person. So, here, the creditor, M’Grhee, has gained his money against Ellis, in lieu of the judgment which he held against Browning, or so much as the price of the slave amounted to. It will, therefore, be equitable to place Ellis in the same attitude, as to Browning, in which M:Ghee formerly stood, by giving him a decree to that amount against Browning. But asjhis does not appear to have been his object in filing his bill, and it can only be granted him under the prayer for general relief, and his main design seems to have been to gel clear of the sale bond, from which he cannot be relieved, to force such a decree upon him may not only surprise him, hut operate to his prejudice. We have seen that, prima facie, the sheriff is liable, unless he shall have some defence' which now cannot be adjudged of, as be is not before tt^p court; and it may be to the interest of Ellis, owing tó the circumstances of Browning, to dismiss his bill and elect to proceed against the sheriff, and such a decree against Browning may bar him of that election; for it is a general rule, that where a party has a right to elect to proceed against either of two other persons for (he same demand, and the liability of these two is precisely equal, a recovery of satisfaction against one, extinguishes the right to proceed against the other, as it would be unjust to permit a recovery of a double satisfaction for the same demand. It will, therefore, be proper for the court below, on the return of the cause, to permit Ellis then to make his election, whether to proceed to such a decree against Browning, or to dismiss his bill without costs, for the purpose of saving his recourse against the sheriff, if any he has.
*251 We will barely remark^Hfe so f»p as"%e ■ have laid |iown any principle in this opinion, screening the creditor from any liability to make good property sold under execu tion, or the debtor from becoming li.able to!an action at law in favor of the purchaser, for the plaice of the property sold, we would not be understood as apffljprig it to cases where either thé'creditor or debtor has been immediately instrumental in causing the property of a4, stranger to be sold, and thus been the cause of deceiving the purchaser. Such cases may stand on different grounds from this, where the sheriff took his course without the direct agency of either, and the decision of them is reserved until they occur. But, i‘n this case, a majority of Rip court, Judge Owsley dissenting, are of opinion that there is no responsibility. resting on the .creditor, and that he is entitled, as against the purchaser, to the benefit of the sale bond with security.
The decree must, therefore, be reversed with costs, and the cause be remanded, with directions to the court below to dissolve the injunction and dismiss the bill, as to M’Ghee, with damages and costs, and to permit the complainant in that cdsurt to take his decree against the defendant, Browning, or to discontinue his suit as ta him, as he may choose.

 The case of Smith vs. Hornback and Reed was decided at the fall term 1821-, and may be considered as a leading case; but 1 was prohibited from publishing it, because it contained no principle which was not contained in some case in print; It was referred to in the case of Small and Carr vs. Hodgen, decided at the next term.(1 Litt. Rep. 17,) which last case decides the same principle-»