Scates, Justice, delivered the opinion of the court. England brought an action of indebitatus assumpsit, to recover back from Clark the price of a certain horse sold to him by a constable, under and by virtue of an execution in favor of Clark. The pleadings show that the property was levied upon [* 489] and sold as the property of the defendant in execution, and that afterwards a stranger brought his action of re-plevin against England, the purchaser, and recovered the property. The court sustained a demurrer to the declaration, which is assigned for error; and we are called upon to determine the extent of the liability of the plaintiff in execution upon an implied promise to return the money paid on the purchase of such goods as may be sold by the officer to satisfy his debt, upon the ground that he- has received money which ex oequo et bono he- ought not to keep. The writ commands the officer to take the goods of the defendant in execution. If he take the goods of a strange'r, he is a trespasser. If he sell these goods for the benefit of the plaintiff in execution, and another purchase, and advance their value to the use and benefit of the plaintiff, will the law imply such a warranty of title by the plaintiff, as to raise a promise to return the money in case the purchaser is evicted of the possession, or has the purchaser better right to a return ex oequo et bono than the defendant has to keep the money? The general rule of caveat emptor applies to the sale of lands ; to all judicial sales, whether made by marshals, sheriffs, their deputies, constables, or special commissioners appointed by the courts; and the rule not only discharges the officers or others who may make the sale, but equally protects from an implied warranty the plaintiff and defendant in execution. The rule is founded in public policy, but there are exceptions to it, which in no way contravene that policy. Thus the officer, or parties, may go beyond the obligations imposed by law, and so bind themselves by express undertakings, by fraud, etc.; and so a stranger to the proceedings, may, by fraud, etc., bind himself, or prejudice his claim to the property sold, where an officer levies on property not liable to be taken upon execution, and such like cases. But it is contended that this is not a judicial sale; that such only are judicial, where the proceedings are in rem, or the specific object of the remedy and decree is to subject certain estate to sale, and that the rule caveat emptor does not apply to all sheriff’s sales on levies made under general judgments and general executions. As therefore the rule does not apply, if the purchaser acquires no title, and derives no benefits, an action of assumpsit will lie, either against the plaintiff, or defendant in execution, or the officer. I know that Lord Mansfield, in the eases of Moses v. M’Ferlan, 2 Burr. 1012, has laid down a very broad doctrine in argument, that where, ex oequo et bono, the plaintiff is better entitled to have the thing, than the defendant is to withhold it from him, he may-have a remedy, and by this form of action. The case itself is a strong one, but not so broad as the doctrine of the court in arguing it. The defendant had induced the plaintiff [* 490] to endorse anote for the accommodation of the defendant, under a promise that lie should not be held liable. The defendant afterwards sued him in a court of conscience on this endorsement, and recovered the amount. The court of conscience holding that these facts were inadmissible in defence in that court. The action was brought in assumpsit to recover back that money, and Lord Mansfield and the court held that he was entitled to recover, because the facts which showed the plaintiff, ex rnquo et bono, entitled to recover, had not been adjudicated upon, but excluded in the court of conscience, as inadmissible in defence in that court. The authority of the case itself has been doubted, questioned, shaken, overruled; and I imagine more from the latitudinous rea-oning in the case, than the unsoundness of the particular case itself. See 1 Selw. N. P. 82; Greenleaf’s Overruled Cases 269. If the plaintiff is, in justice and conscience, entitled to the thing or sum of money of the defendant, he may recover it; not where there is simply a moral obligation, but a legal or equitable obligation on the defendant to let him have it. The rule of caveat emptor has been applied then to judicial sales. 5Peters’ Cond. R, 714; 3 Scam. 505. To sales by sheriffs. 4 Littell 247; 2 J. J. Marsh. 82; and to constables’s sales. 1 Blackf. 11. But to the rule, the exceptions stated above exist, and I may add one or two more that seem to grow out of the policy of the law in part. As where a sheriff levied upon the estate of a bankrupt, after a secret act of bankruptcy, although unknown to him, and sold and paid over the proceeds, yet it seems the assignees of the bankrupt may recover it back. 1 Maule & Selw. 42. Again, where a constable levied an execution from a justice of the peace, on a lease-hold interest, which was not liable to be taken on such an execution, it was held that he was liable to refund it, it not appearing that he had paid over the money (19 Johns. 73), but if he had paid it over, the court expressed a strong doubt of the plaintiff’s right, ex aequo et bono, to recover. It is laid down in 2 Barbour & Harrington’s Dig. 420, § 4, upon the authority of Strong v. Schultz, 1 Hill’s Ch.’ R. 494, that the general rule that there is no implied warranty in sales made by a sheriff or other ministerial officer, applies exclusively to the quality and property of the thing sold. It does not apply to cases where the sheriff or other officer asáumes an authority where none is given by law. In every case there is an implied covenant on the part of the sheriff, that he has authority to sell; and the recital in his deed, of bis authority, as effectually estops him as if it had been an express covenant. The case in 5 Peters’ Cond. R. 714, was a proceeding in ren in the admiralty court. The court ordered the goods to ['*'491] be sold. An auctioneer, under the direction of the marshal, sold the goods, exhibiting samples. It afterwards appeared that-the goods,'at the time of sale, were ■ greatly damaged, and inferior to the samples. But it was held that there was no implied warranty on the part of the marshal or auctioneer. The case of Morgan v. Fencher, 1 Blackf. 11, was in casé against a constable, who sold the plaintiff a horse taken under an execution,, and which the constable, at the time of sale declared, was the property of the execution debtor; and that he would sell him as the law directed. On demurrer to the declaration, it was held that this did not amount to a warranty, the constable having no inducement to warrant, the court would look for unequivocal expressions of warranty. In Pete v. Blades, 5 Taunt. 657, it was held that where a sheriff sells goods on execution, there is an implied promise that he does not know that they are not the property of the execution debtor; and if he does know it, although he may have paid over the money, before notice not to do so, the purchaser may support an action of assumpsit against him, and recover to the extent to which he has been demnified by the deception. In the case of McGee v. Ellis Browning, 4 Littell 244, Ellis purchased a slave at sheriff sale, on a credit, and executed his bond for the money. The execution was in favor of McGee, and against Browning. The slave was afterwards recovered of Ellis by title paramount to Browning. He filed his bill to enjoin the bond perpetually. In this case the question of an implied warranty by a plaintiff, who gave no directions to the sheriff to levy on this particular property, came'directly before the court; andit was holden that there was no such warranty, and that he was entitled to hold the money, or the bond to secure it. ■ The court-also discussed at large the question of an implied warranty, either by the sheriff or defendant, and were of opinion that the law did not imply one under such circumstances. They were of opinion that the purchaser had a remedy either against the sheriff or defendant in execution. But without so deciding, they dismissed the bill in the case, in order that, if he had such election, he might make it; but if he had none, they seemed strongly inclined to enter a decree in equity against the defendant, for the purchase money which had. been advanced to his use, and applied to discharge his indebtedness. They were inclined to the opinion that the law would not imply a promise under such circumstances, so as to support an assumpsit. The case of Wolford v. Phelps, 2 J. J. Marsh. 31, was a similar case of a bill to enjoin the collection of bonds given for the purchase of land sold under an execution in favor of the defendant; and also alleging the fraudulent concealment, by the defendant, of the fact that he had a mortgage on the same [*492] premises, although he was present at the sale. The court held the transaction to be fraudulent, and on that ground alone the plaintiff was entitled to relief. In Dalton’s Office of Sheriff 146, in speaking of the responsibilities of a sheriff in executing a fieri facias, the author says: “If the sheriff shall return his writ, that he hath taken so much goods of the defendants, and that he hath, denarios illos paratos ad reddendum, to the plaintiff,” and the value be recovered of him by a stranger, “ then,” he adds, “ is the sheriff at a double mischief; for although the value of the goods be recovered against the sheriff, or his officer, by the owner of the.goods, yet the plaintiff in the action may, within the year after execution done, have a scire facias upon the judgment, and return made by the sheriff, and thereby shall compel the sheriff to bring the money into court, and after the year, the plaintiff may have an action of debt against the sheriff for it, if he be not otherwise ordered by the court, where the judgment is depending.” It seems there ought to be a remedy. But there are but few authorities upon the point; and the difficulty seems to be, as to the person who shall bear the responsibility, and refund the purchaser his money for which he has received no consideration. The courts seem not inclined to impose it upon the plaintiff in execution, who has but received his due, although it may not have come from his debtor, unless he is guilty of fraud, or has done some other act to .charge himself; and we are of the same opinion. The liability must be upon the officer, or the defendant. The officer could have but little interest to induce him to warrant; the proceeding is in invitum as to the defendant, and he can hardly be said to warrant. But he is most benefitted by having his debt discharged by the advance and application of the purchase money. But as these parties are not before the court, we express no decided opinion. If remedy there be, it may be by bill in equity, or action of assumpsit, as I think the latter broad and comprehensive enough to embrace this case. See 1 Leigh’s N. P. 545-6. The judgment is affirmed with costs. Wilson, Chief Justice, delivered the following separate opinion : The appellant purchased a horse sold by a constable under execution, as the property of the defendant in the execution. Af-terwards a stranger to the proceedings sued for, and recovered the horse from the purchaser. He then brought this suit against the plaintiff in the execution, to recover back the purchase money. A demurrer to the declaration raises the question, whether under these circumstances, the purchaser can, in this action, recover back, from the plaintiff in the execution, the money paid. [*493] But few cases are to be found in the books upon this point. It appears, however, to be conceded, that the purchaser is entitled in some form, to recover of some one; that the rule of caveat emqotor, which applies to judicial sales, does not apply to general sales under execution, by sheriffs or constables. But of whom he may recover, whether of the plaintiff, or defendant in the execution, or the constable isnotso well settled by adjudged cases, as from the frequency of transactions of this kind, we would be led to expect. Where, however, -the constable has authority to sell, and he sells only the title of the defendant in the execution, without warranty, or fraud, he cannot be made responsible-for any defect of title, though he would be liable in trespass to the owner of the property wrongfully taken. In this case, the purchaser seeks to make the plaintiff in the execution liable, upon the ground that he has received the money of the former, without consideration, and is therefore bound in equity and justice to refund it; and in support of this position, the case of Moses v. M'Ferlan, 2 Burr. 1012, is relied upon. In that case Lord Mansfield said, that, where ex cequo et lono, the plaintiff is better entitled to the thing, than the defendant is to withhold it from him, he may recover in this form of action. This is a most comprehensive rule, but I believe it has never been recognised in any subsequent case, to the extent its terms would seem to imply, and does not, I conceive, apply to this case. The plaintiff has received no more tha'n he was legally entitled to, and although it came from the purchaser, and he has lost the consideration for which he paid his money, it was not the procurement or agency of the plaintiff that induced the purchase or occasioned the loss. He allowed the law to take its course, without interposition or control, and by receiving from its officer, the fruits of its process, he violated no legal or equitable obligation, and incurred neither the one nor the other, to refund that which he was entitled to receive. No promise to that effect can be implied, any more than can a promise to answer for a trespass of an officer over whom he has exercised no control; and such an undertaking ^or liability is not pretended. If the mistake as to the ownership of the horse had been discovered before the officer had paid .over the money, it appears to be well settled, that upon an application to the court, it could arrest the money in his hands for the benefit of tho purchaser, and permit the officer to amend his return upon the execution, so as to renew the levy, upon the property of the debtor. In the ease of McGee v. Ellis & Browning, 4 Lit-tell 244, however, the court of chancery refused to interfere even to this extent, to the prejudice of the plaintiff in the execution. This is the only case in point we have found, and it not only decided that the plaintiff, in a case like the present, is not liable, but it very clearly intimates that the. defendant is. To the argument that, as the plaintiff in execution gave [*494] the original credit, he should be responsible for the risk of all loss growing out of it, it may be answered, that the law has settled it otherwise, and that upon principles of justice and policy. No reason is perceived why each one should not be responsible for the hazards he voluntarily incurs. But the application of the principle contended for by the plaintiff in error would make the plaintiff answerable for all the acts of the officer, and not only .for the title to property sold under his execution, but also for its quality. Under such responsibilities it would in general be more prudent to abandon a debt, than to appeal to the law to enforce its payment. Litigation should have an end as soon as the object of its institution is accomplished; but if years after a plaintiff has received his debt, through the agency of the law, he can be made to refund, because of some neglect or mistake on ,the part of its officers, he can never know when he is safe, or at the end of the law. Admitting that by bill in chancery, or by application to the court, he can set aside the former execution and obtain anew one, against his debtor, would it not be positive injustice to drive him to this expense, force him to refund money which he had probably parted with, and incur the risk of the continued solvency of his debtor, when no fault can be imputed to him. This would be equally against the policy of the law, for the effect would be, to make the defendant ultimately liable by a circuity and increase of litigation which would be avoided by a suit against him in the firstinstance. The money paid by the plaintiff has accrued to the benefit of the execution debtor; the prim eiple relied upon by the plaintiff would therefore be more applicable to him, than to the execution plaintiff. This debt has been .discharged at the expense of the plaintiff. It would seem therefore most reasonable, and just, that he should be held to make indemnity in the first instance, and thus save another from unmerited expense and litigation, particularly as that would impose no hardship upon him, his ultimate liability being certain in any event. In this view of the case, authority and justice are alike opposed to the recovery by the appellant against the plaintiff in execution, and the judgment must be affirmed with costs. Judgment affirmed.