*J. S. Reid,* for the appellants.

*J. Yaryan,* for the appellee.

---

Dunn and Another *v.* Frazier.

If land be sold on execution and the creditor receive the purchase-money, the purchaser cannot, either at law or in equity, recover back the money from the creditor, merely because the debtor had no title to the land.

But the debtor is in such case liable to the purchaser, in equity, for the purchase-money.

ERROR to the *Dearborn* Circuit Court.

Smith, J.—This was a bill in chancery brought by *Frazier* to recover from the plaintiffs in error the amount which he paid for a lot of land, purchased at sheriff's sale on an execution in favour of *Isaac Dunn* against *John Saltmarsh* and *Gardner Elliott,* administrators of *Samuel Elliott,* deceased, on the ground of a failure of title. The case was heard in the Court below on the bill of complaint, the answer and cross-bill of *Dunn,* the answers of *Adams* and *Jelly,* a supplemental bill of the complainant, answers to cross-bill, exhibits, replications, and depositions.

The following facts may be considered as established: On the 26th of *April,* 1837, *Dunn* obtained a judgment in the *Dearborn* Circuit Court against *Saltmarsh* and *Gardner Elliott,* administrators of *Samuel Elliott,* for 371 dollars and 25 cents, being for a debt due by their intestate before his death. An execution was issued upon this judgment which was returned unsatisfied, no goods or chattels being found in the hands of the administrators. On the 11th of *September,* 1840, *Dunn* filed his petition in the same Court, by his attorney, asserting that said *Samuel Elliott* was, at the time of his death, the legal owner in fee-simple of certain lots in the town of *Lawrenceburgh,* including lot No. 196. The administrators and heirs of *Samuel Elliott* were made defendants,

and in the course of the proceedings on this petition, an order was obtained for the issue of an execution against the real estate therein described.   An execution was accordingly issued on the 26th of *November*, 1840, and on the 9th of *January*, 1841, at the sale under this execution, *Frazier* became the purchaser of lot No. 196 at the price of 300 dollars. *Gardner Elliott*, one of the administrators, was present at the sale and solicited *Frazier* to become the purchaser, assuring him that the title was good.   The attorney of *Dunn* was also present, bidding on the property for *Dunn*, and did bid in one of the lots sold at the same time.   *Adams*, also, purchased several of the lots which were then sold under the same execution.

After the sale, *Frazier* refused to pay the purchase-money, and the sheriff made his return accordingly.   On the 14th of *January*, 1841, a notice was served on *Dunn*, *Adams*, and *Frazier*, on behalf of *Saltmarsh* and *Gardner Elliott*, administrators, that they would move at the next term of the Circuit Court, to have the sale of all said lots set aside on account of some alleged irregularity in the proceedings.   On the 17th of *February*, 1841, *Dunn*, intending to waive all or any rights he might have had under the sale to enforce the payment of the purchase-money by *Frazier*, caused an *alias* execution to be issued to make the money which remained due upon his judgment, and the lot was re-appraised and again advertised for sale.   At this stage of the proceedings, on the 3d of *March*, 1841, *Dunn* sold and assigned the balance due him upon the judgment to *Adams*, and the latter assumed the control of it.   The execution last issued was then returned without any further proceedings.   It is charged in the bill of complaint that *Adams*, after his purchase of the judgment and before payment was made by *Frazier*, assured the latter that if he would pay the money he would obtain a good title to the lot, and threatened if he did not so pay it, proceedings would be instituted to compel him to do so with damages. *Adams* denies this charge generally, but admits that some time in the spring of 1841, he did as the agent of *Weaver*, the sheriff, tender *Frazier* a deed for the lot, and on the latter asking him if the deed could be a good one, he replied "he believed it was as good a one as the sheriff could make;" and

on the refusal of *Frazier* to take the deed, he served a notice upon him that the sheriff would move for a judgment for the amount of his bid with damages and costs. *Frazier* still refused to accept the deed, and on the 4th of *June*, 1841, *Adams* caused a third writ of execution to be issued, the proceedings upon which were enjoined by order of the president judge of the Circuit Court upon the application of *Saltmarsh* and *Gardner Elliott*, the administrators. Before any further steps were taken, *Frazier* paid *Adams* his portion of the judgment amounting to 153 dollars and 60 cents, and paid the balance of the purchase-money bid by him, 146 dollars and 40 cents, to *Cheek*, the clerk of the Circuit Court, in whose hands it remained.

*Samuel Elliott*, at the time of his death, had no title to the lot in question. He had a title-bond from *Moore*, but had not paid the purchase-money or received a conveyance. It also appeared that an application had been made to the Probate Court to settle his estate as insolvent.

The Circuit Court ordered the money in the hands of the clerk to be returned to *Frazier*, and rendered a decree in his favour against *Dunn* and *Adams* for 153 dollars and 60 cents (the sum paid to *Adams*) with interest; and in default of such payment within thirty days, execution to issue against them as in other cases at law.

This decree cannot be sustained. We know of no principle or authority by which a creditor can be held liable, either in law or equity, to refund to the purchaser at a sale under execution the money paid by him, upon the single ground of a failure of title. It does not appear that *Dunn* was present at the sale, or that he made any representations whatever to induce the complainant to purchase. *Adams* did not become interested in the judgment until after the sale, and though he seems to have made some threats of commencing proceedings against *Frazier* to compel him to pay the purchase-money with damages, and to have answered evasively when the latter inquired if the sheriff's deed would convey a good title, it is not shown that he said any thing amounting to such a misrepresentation of the facts as would render him liable to refund.

The rule *caveat emptor* is generally applied with strictness

to purchasers at sales under execution. It was held by this Court in *Muir* v. *Craig*, 3 Blackf. 293, that the purchaser, at a sheriff's sale, of land to which the execution-debtor had no title, could recover from the debtor, in equity, the amount of the purchase-money paid to the sheriff. This was a relaxation of the rule, and it was going as far as we should be warranted in going in the present case. In the case of *M'Ghee* v. *Ellis et al.*, 4 Littell, 244, cited in *Muir* v. *Craig*, a distinction was made between the positions of the creditor and debtor in such cases, and it was held that the former would *not* be liable to refund, but that the debtor would, when there was a total failure of title, because the debt being paid by the money of the purchaser, the latter would in equity be entitled to be substituted in the place of the execution-creditor, so far, at least, as to enable him to maintain a valid demand against the debtor. Upon the principles recognised in these decisions, *Frazier* is entitled to a decree against the estate of *Samuel Elliott*, though not against *Dunn* and *Adams*, or either of them. If the money in the hands of *Cheek*, the clerk, was an overplus after the payment of the balance due on the judgment, that part of the decree ordering it to be repaid to *Frazier* was right; but as it does not certainly appear from the facts stated in the record where that money was to go, we shall reverse the whole decree, and remand the cause with instructions to the Circuit Court to render one in accordance herewith.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. Ryman*, for the plaintiffs.

*E. Dumont*, for the defendant.