JHDGE LINDSAY
delivered the opinion oe the court.
On the 24fcb of May, 1865, Fogle conveyed to Tucker a tract of land, containing about twenty-seven acres, for the consideration of two thousand five hundred dollars, secured to be paid by the assignment to Fogle by Tucker of a note on James and M. W. Crowdus for the sum of four thousand two hundred and forty dollars; it being agreed tbat after tbe *292 purchase price for said land was paid, and two other small debts owing by Tucker to Fogle were discharged out of said note, that the balance when collected should be paid to Tucker. In the deed Fogle expressly retained a lien upon the land to secure the payment of the purchase price.'
Fogle sued and obtained judgment on said note at the first term of the Marion Circuit Court succeeding the date of the assignment; execution was sued out in due time, and was levied on the interests of James and M. W. Crowdus in two tracts of land, and the same were sold for an amount sufficient to satisfy the entire judgment, the purchasers executing bonds as required by law.
In December, 1865, Martin Bannister brought suit in the Marion Circuit Court against James and M. W. Crowdus and others, alleging that they had both conveyed certain portions of their estate for the purpose of preferring creditors and in contemplation of insolvency, and asking that said conveyances be treated as assignments for the benefit of all their creditors. This petition was sustained, and the court disregarded the sales made under the execution in favor of Fogle, and caused the land so taken and sold to be resold, and applied the proceeds to the payment of the debts proven against the estate of the two Crowdus. This judgment having-been affirmed by this court, the purchasers at the execution sales moved the court to set the same aside and cancel their bonds, which was done. Fogle’s claim was duly presented and proven in the suit of Bannister against the Crowduses, and he received thereon of their assets an amount sufficient to reduce his claim against Tucker, on account of the purchase money due for the land, to the sum of $734.44; and to recover this amount and to enforce his lien he prosecutes this action.
Appellant insists that the execution sales, the acceptance of the sale-bonds, and the return of the sheriff satisfied appellee’s execution, and extinguished all claim against him *293 or the land; and further, that as there had been no return of nulla bona upon any execution issued on the judgment against James and M. W. Crowdus, no action could be maintained against him on account of his assignment. A demurrer was sustained to the two answers setting up these defenses by the court below; and appellant failing to answer further, judgment was rendered against him for the balance due on the land as aforesaid, and the lien enforced; and from that judgment he has appealed.
The case of McGhee v. Ellis & Browning, 4 Littell, 244, is confidently relied upon as sustaining the first ground of defense. It is argued that the failure of the title to the lands sold under the execution caused by the suit of Bannister did not have the effect to release the execution purchasers from the payment of their bonds; that the action of the court vacating the same was unauthorized; and the appellant, being no party to that proceeding, claims that he can not be affected thereby. In the case in Littell the sheriff, without the direction or knowledge of the creditor, seized and sold the property of a third person, and the contest was between the innocent creditor, who had merely availed himself of the remedies provided by law to enforce the collection of his debt, and a voluntary purchaser, who might by the use of ordinary diligence have ascertained the title of the property he was buying.
The execution sale satisfied the creditor’s judgment, and prevented him from subjecting property of the debtor to the payment of the same. Here, however, the judgment of the court in the Bannister suit settles conclusively that at the time of the levy and sale under the execution neither one of the defendants owned or held property to any amount which could have been subjected to the payment of the judgment by any other proceeding than that resorted to by appellee of making himself a party to that action. Nor can it be said that in this case the creditor was in no wise instrumental in causing the *294 lands of the defendants in the execution to be sold. At the time he caused the execution to issue, the conveyances which operated as transfers of all the property of the defendants to their vendees for the benefit of all their creditors had been made and executed, and the attempted enforcement of the judgment by execution would, if successful, have resulted advantageously both to Fogle and his assignor. In attempting to secure this advantage, instead of resorting to his action in equity under the provisions of the act to prevent fraudulent assignments, Fogle was instrumental in bringing about the sale of the lands for which the sale-bonds were given; and as the title failed, it was proper that he and not the purchasers should bear the loss; the more especially as his real loss was only his failure to secure an advantage over other creditors of the defendants in his judgment. As this attempt was made in the interest of Tucker as well as of himself, it would be manifestly unjust to hold Fogle responsible to Tucker for its failure; and.we agree with the court below that this ground of defense is not available.
Ordinarily no action can be maintained on an assignment until the assignee has obtained judgment and had his execution returned nulla bona. But this rule is not inflexible. The removal of the debtor from the state after the assignment, and before the note falls due, has been held to dispense with the necessity for such evidence of due diligence. The debtor having been declared a bankrupt a few days after the maturity of the note, was held to be sufficient to excuse a failure upon the part of the assignee to sue at all. (Roberts v. Atwood & Co., 8 B. Monroe, 210.)
In this case the assignee was intercepted by the court while using legal diligence, and the judgment of the court was more conclusive evidence'of the insolvency of the debtors than a return of no property found has ever been regarded. All their estates, both legal and equitable, were subjected to the *295 payment of their debts, and no diligence upon the part of appellee, however extraordinary, could have enabled him to realize a cent in addition to what he received in the distribution made by the court of the assets of the two debtors.
We do not perceive that the right of appellee to recover in this action is in any way impaired by bis failure to sue out execution after his levy and sale were quashed. There is nothing in the record indicating that any amount could have been realized thereby; and the insolvency of the payors of the note having been once established by conclusive evidence, his right of action was perfect.
We have been able to discover no error in tbe record prejudicial to appellant, and we therefore affirm tbe judgment of the court below.