---

CASE 38—ORDINARY—MARCH 10, 1881.

## Francis v. Gant, &c.

APPEAL FROM TRIGG CIRCUIT COURT.

*The opinion in this case has been suspended by a petition for a rehearing, which has lately been overruled.*

The assignee avers that the obligor in the note assigned was insolvent at the time of the assignment; he so continued to be, and was insolvent at the institution of the suit to recover against the assignor upon the assignment.

1. This is not sufficient to enable the assignee to recover.

2. Before the assignee of a note can recover against the assignor, he must institute his action without unreasonable delay, recover his judgment, obtain execution, and have a return of "no property."

Francis v. Gant, &c.

.3. The record of the action against the debtor showing a return of "no property" is itself the creation of the right of action, and is indispensable to a recovery.

.4. The insolvency of the obligor is no breach of the implied obligation of the assignor to refund the consideration of the assignment, unless the assignee discharges his implied obligation by obtaining a judgment with proper diligence, and a return of *nulla bona* upon an execution.

.5. The question of diligence is one of law.

FENTON SIMS FOR APPELLANT.

The allegation of insolvency in the petition, not coupled with any other averments, amounts to nothing. Appellees should have averred that they instituted suit at the first term of court after the notes matured; that judgment had been obtained, execution was issued, and a return of *nulla bona* was had thereon. (Chambers v. Keene, 1 Met., 293; Bard v. McElroy, 6 B. Mon., 419; Marr v. Smith, 7 *Ib.*, 192; Markley v. Withers, 4 Mon., 15; Thomas v. Taylor, 2 J. J. Mar., 223; Hume v. Brown, 3 Dana, 450; Perrin v. Broadwell, 3 Dana, 597; 9 Dana, 46; 8 B. Mon., 229.)

DABNEY & CRENSHAW FOR APPELLEE

1. The well-established principle of due diligence, adverted to by appellant's counsel, does not apply to this case.

2. Admitting the insolvency of the obligor, appellant admits his responsibility as assignor.

3. As insolvency is the extremity to which the debtor is pursued, nothing more can be required, and the cause of action at once arises. (Emerson v. Claypool, 4 B. Mon., 19; Hurst v. Chambers, 12 Bush, 158; 9 B. Mon., 55; 8 *Ib.*, 209; 13 *Ib.*, 376; 7 Bush, 293; Civil Code, sec. 126.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, J. W. Bruff, sold to the appellant, J. H. Francis, a grist-mill engine and boiler, and accepted as payment from the latter two notes on David A. Dunn for one hundred dollars each, indorsed or assigned by the appellant for value received.

These notes were a lien on a small tract of land sold Dunn's wife, and this land was subjected to the payment of the debts by a judgment in equity, but failed to satisfy the full amount of the two notes and interest. The balance

left unpaid, amounting to nearly as much as the principal of the notes assigned, the appellee recovered of the appellant, as assignors, by a judgment of the Trigg circuit court, and of that judgment they now complain. The appellee, in this petition, alleges "that the obligor, David A. Dunn, was, at the time of the assignment of the notes, insolvent, and owned no property, and has so continued to be insolvent, and is now insolvent; that he had prosecuted the claims with due diligence, and therefore the appellants are liable.

There is no demurrer to the petition, but an answer filed, in which the appellant alleges that the appellee failed to prosecute his suit in equity with that diligence required, and further alleges facts showing that there was no action instituted at law, or judgment obtained at the first term of the court at which an action could have been properly brought, and that when judgment was obtained no execution ever issued. He therefore denied the exercise of such diligence on the part of the assignee as would make him responsible, but failed to deny the allegation of insolvency, as alleged by the appellee, and for that reason the court below seems to have rendered the judgment holding him responsible as assignor.

The petition was clearly defective, and has not been cured by the answer; but, on the contrary, that pleading discloses a state of fact that must necessarily bar the appellee's right of recovery.

The fact of insolvency existing, not only at the time of the assignment, but continuously since that time, does not constitute a cause of action, or authorize the recovery against the appellant; and although such allegations are made and not responded to, the liability of the assignor to the assignee is made to depend upon the existence of

other facts that must be alleged and proven in connection with the insolvency of the debtor before the assignor can be held responsible. The question of due diligence arises as well as the question of insolvency, and the burden is on the assignee to establish both before he is entitled to recover. The one is a question of law, the other is a question of fact. What is due diligence must be determined by the court, and unless it appears from the appellee's petition that legal diligence has been exercised by the assignee to recover from the debtor, a demurrer, if interposed to the petition, should be sustained; and if no demurrer, a judgment by default will be denied. The assignment is silent as to the obligation it imposes on either the assignor or the assignee; but the law implies an agreement on the part of the assignor to become liable to the assignee, if, after due diligence by suit against the obligor on the instrument assigned, he fails to make the debt by reason of the obligor's insolvency. The assignee accepts the note with the assignment on that condition, and must exercise proper diligence by action to recover the money before the law will imply an agreement on the part of the assignor to refund what he has received.

Exceptions may be found to this general rule, as where the obligor in the note has been released by a discharge in bankruptcy. That fact being admitted, no judgment could be obtained, and if legal proceedings were instituted, it would result in a dismissal of the action, as the obligor has been released from all liability. So if the obligor leaves the state, going beyond the jurisdiction of its legal tribunals, the assignee is not compelled to pursue him, but the mere fact of insolvency at the date of the assignment, or continuously thereafter, has never been held by the courts.

of this state, in the many decisions had upon the subject, as affording any excuse for not prosecuting with due diligence a suit at law against the payor. The leading case on this subject is that of Smallwood v. Woods, reported in 1st Bibb, the opinion delivered in the year 1809, and it has been followed since that time in repeated adjudications.

In speaking of the liability of the assignor, and when he became responsible on his assignment, this court in that case said: "*It is* agreed that this responsibility is to accrue after due diligence by *suit*." In that case, a Virginia case of Mackie's ex'r v. Davis, and a former opinion of this court in the case of Boals v. McConnel, were adverted to as not settling the question as to what constituted due diligence, *but leaving it at large*, and without designating the ultimate point to which the assignee shall go in prosecuting the debtor before he has his recourse on the assignor. The declaration in that case only averred that the assignee had used due diligence, and the court below, having permitted the jury to take the record on that subject, the jury referred the matter back to the court to know whether the record amounted to due diligence. The facts being agreed, it was then a question of law with the court whether due diligence was used, and this court said: "It *seems* to follow that the assignee ought to take every compulsory process of the law against the debtor until his insolvency is established, or the suit and its incidental remedies prove insufficient to coerce payment."

The doctrine of that case has been followed so long by the decisions of this court that it may now be regarded as among the fundamentals of the law, and the rule is now well settled, in the absence of some agreement, that before the assignee can recover of the assignor in a case

Francis v. Gant, &c.

like this, he must institute his action, *at the first term of the court*, obtain his judgment, have execution issued, and a return of no property found, without any unreasonable delay.    And as said in the case of Trimble v. Webb, 1st Monroe: "Evidence of insolvency other than that proved by the force of execution itself has never been held sufficient to charge the assignor."    A failure to bring the action at the first term of the court, when there is reasonable time after the assignment in which to institute it, or a failure to have the execution issued within a reasonable time, are such delays as will release the assignor from responsibility.

But it is maintained that the record of the action against the debtor, with a judgment and return of no property, is only the evidence of the debtor's insolvency, and that fact (the insolvency) being admitted by the answer, or not denied, requires no proof; that the record is only required to be produced when the issue as to insolvency is made, and then because it is the best evidence.    This reasoning would be sound if, as counsel contends, the insolvency of the debtor alone will authorize the recovery.    The fallacy of the argument consists in the failure of counsel to recognize the fact that the record of the action against the debtor, showing a return of no property, is not the evidence of a right already existing in the assignee, but is the creation of the right itself, and is indispensable to a recovery, the fact of insolvency, without any legal proceeding against the debtor, creating no implied obligation on the part of the assignor to the assignee.    It is more like an action based on a record, as the failure to allege its existence leaves the assignee without a cause of action, or is analogous to cases where, in order to sustain the agreement or promise declared on, one character of evidence will alone support the action.

In such cases the evidence of the liability constitutes a part. of the cause of action: that is, it must be averred in the petition that such evidence exists, for the reason that it is the basis of the recovery. In an action on a promise to pay the debt of another, while the writing evidences the promise, the petition must allege the existence of the writing; or in an action to enforce a contract for the sale of land, the petition must allege that the contract is in writing, notwithstanding the writing is the evidence of the contract between the parties. So, in an action by the assignee to recover of the assignor, due diligence, by prosecuting the obligor to insolvency, with a return of no property found, must be alleged and proven, and when not alleged, the issue may be made by a demurrer as well as by plea. If, when an issue of fact is raised as to the insolvency of the obligor, it becomes necessary to introduce an execution with a return of *no property found* to support the action—and this is the only kind of evidence that can be adduced—it is necessary to allege in the petition facts showing that the debtor has. been prosecuted to insolvency.

Due diligence, says this court, in the case of Johnson v. Lewis, 1st Dana, is a question of law. *If so, the facts in this case are, that the maker of the notes was insolvent when they were assigned, and has so continued since that time.* On these facts will the law enable the assignee to recover? Certainly not, because the assignee has shown no diligence in coercing payment. It further appears that a court intervened in the county of the debtor's residence between the date of the assignment and the institution of the action on the notes; that the assignee had ample time to bring his suit at the first court, but neglected it, and has never had an execution issued on one of the judgments. These addi--

tional facts being agreed, will the law imply an agreement on the part of the assignor to the assignee to pay? The answer must be in the negative, for the reasons already given—the want of proper diligence in coercing payment. Besides, if the question of diligence in this class of cases is one of law, a petition that merely alleges the insolvency of the party at and since the assignment, and the prosecution of the maker with due diligence, must necessarily be held bad, as there are no facts alleged enabling the court to determine whether the proper diligence has or not been exercised. It is a mere legal conclusion, without any fact to support it, unless the question of insolvency, as is insisted by counsel for the appellee, is the only issue in such a case. The argument in support of the judgment below suggests this inquiry: When has the assignee a right of action against the assignor? If the views of counsel prevail, when it appears the obligor was insolvent at the date of the assignment, and continued insolvent to the bringing of the action by the assignee, a cause of action by the latter against the assignee exists.

The assignee is not required to coerce payment by an action at law, or to exercise any diligence if the insolvency of the obligor in the note is admitted on demurrer, or by failure to answer, and a breach of the implied undertaking occurs on the part of the assignor from the moment of the assignment, and continues so long as the maker remains insolvent; and the only mode the assignor has of defeating the recovery is to deny the insolvency, and when this is done, the assignee has alleged a cause of action; but as there is an absence of record, with a return of *no property*, he is without evidence to support it. This cannot be the rule. The legal effect of an assignment of notes not regarded as commercial paper was at one time involved in

much doubt, and learned jurists doubted the propriety of establishing a doctrine that imposed on the assignor an obligation to refund the consideration for such paper in the event the obligor in the paper proved to be insolvent; but in establishing the rule creating this liability, a corresponding duty was made to rest on the assignee, and that was to coerce by suit the payment of the debt assigned, and to use proper diligence in its prosecution. When this is done by the assignee, a cause of action arises, and such a record is not only evidence of the liability of the assignor, but is the foundation of the assignee's right of recovery.

The rule here with reference to the right of recovery by the assignee is unlike that adopted in some of the other States. In Virginia, while a suit is in general necessary, the insolvency of the obligor is one substantial ground of excuse for not instituting the action. (See Drane v. Schofield, 6 Leigh.) "If the obligor be insolvent at the time of the assignment, so that a suit against him would be wholly unavailing, it is unnecessary for him to bring suit." (Brown v. Ross, 6 Munford, and Carrier v. Hansbarger, 4 Leigh.)

Such an excuse will not avail the assignee under the well settled doctrine of this court. In fact, a debtor may be insolvent, that is, unable to pay all his debts, and still with ample estate to pay the debt assigned, or he may have no property subject to execution, and his credit good for double the amount of the debt assigned, and to preserve that credit would pay the debt to avoid litigation.

In the case of Jacob Clair v. T. & K. Barr, reported in 2 A. K. Marshall, page 658, it was alleged in the declaration that the maker of the note was, *at its date, and when it became due, insolvent, and continued so until his death, without any estate to satisfy said note or any part of it.* To this peti-

tion the general issue was pleaded, and parol evidence of the insolvency excluded on .the trial. This court said "that notwithstanding the insolvency of the maker of the note, it was still necessary for the plaintiff to show that he had used due diligence to collect the debt, for although he was without property, he might not have been without credit, and if due diligence had been used to collect the money of him, he might have made an arrangement to secure or satisfy the debt. To show due diligence, it was, we apprehend, incumbent on the plaintiff to prove that he had brought suit against the maker of the note before his death, as it was practicable to have done so."

It is true no question was raised as 'to the sufficiency of the petition in that case, but it necessarily follows, that if the evidence of the same facts alleged in the petition would not excuse the assignee from suing, the statements in the petition containing the same facts, and nothing more, cannot be held to excuse, although the petition may be taken for confessed. The insolvency of the debtor is no breach of the implied obligation on the part of the assignor to refund the money, unless the assignee has complied with his implied undertaking, by prosecuting the debtor without unreasonable delay, and obtaining a return of no property. The latter rule affords, ordinarily, a conclusive guide in determining when the cause of action accrues to the assignee, as well as the insolvency of the payee, and avoids the necessity of resorting to parol testimony as 'to the pecuniary condition of the debtor, with the conflicting opinions of witnesses that would likely arise on such an issue after the lapse of years, or even at the date of the transaction itself. It is, therefore, an immaterial inquiry in this case whether the maker of these notes was solvent or insolvent, or whether the insolv-

Francis v. Gant, &c.

·ency has been admitted or denied by the appellants, the right of recovery depending on the diligence exercised in ·coercing payment, and no diligence having been alleged or proven, the judgment should have been for the appellant.

JUDGE HINES DISSENTS IN THE FOLLOWING OPINION:

Appellant, for a valuable consideration, assigned to appellee two promissory notes for $100 each, for the security of which there was a lien on a certain tract of land. Suit was not brought on either of the notes until some time after they were due, and it is conceded that, by ordinary diligence, an action might have been brought on either of them several terms earlier, and that an effort to enforce the lien on the land was not made until some time after the maturity of the last note. On the judgment on the first note an execution was issued and returned "no property." On the judgment on the second note no execution ever issued, and the lien on the land being enforced and it proving to be insufficient to satisfy the full amount of the two notes, the assignee instituted this action against the assignor to recover the remainder. The petition states the several steps taken to enforce payment and alleges that "at the time of the assignment the payor was insolvent, had no property subject to execution, has been since and is now utterly insolvent." To this petition appellant answered, insisting upon a want of diligence on the part of appellee, but did not deny the allegation quoted as to the insolvency of the assignor.

From a judgment against the assignor for the unpaid balance this appeal is taken, and the only question presented is, whether the admitted insolvency, as charged, excuses appellee from the exercise of ordinary diligence in prosecuting appellant to insolvency.

I am of the opinion that the admitted insolvency of the payor, existing at the time of the assignment and continuing long after the maturity of the assigned notes, relieved the assignee of the necessity, that would have otherwise existed, of showing, within reasonable time, such insolvency by suit and return of "no property."

My understanding of the legal effect of such an assignment is that the assignor assumes to pay the assignee the debt in the event he cannot make it off the payor. That the assumpsit does not imply that the assignee shall do any specific thing in order to render the assignor liable is manifest both from the reason of the law and from adjudged cases. The fact to be established by the assignee to enable him to recover of the assignor is that the claim cannot be made out of the payor of the note or bond, which fact, when established shows the assignment to be without consideration, and for that reason the right of recovery exists. The manner in which that fact is to be established is a question of evidence to the determination of which the ordinary rules of evidence are to be applied. This court heretofore seems to have proceeded upon the conservative idea that the best evidence of the insolvency and inability of the payor to satisfy the demand against him is to show a judgment and return of "no property," both of which must be obtained with ordinary diligence. That rule ought not to be departed from, not only because of the sanction it has received by adjudications extending over a period of eighty years, but because of the uncertainty that would result in a determination of the fact of insolvency by the introduction of oral evidence. The rule is founded upon the familiar principle that the best evidence should in every case be presented. But when the reason fails the rule must open for excep-

tions.   Hence, this court has held that no suit is necessary
against the payor when he has left the state for permanent
residence before the maturity of the obligation, when the
payor has been adjudged a bankrupt, and when it is shown
that the debt was discharged before the assignment.   These
exceptions show that the effect of the assignment is not to
bind the assignee to bring suit and obtain judgment and
return of "no property," when such a proceeding would
clearly be unavailing.   The law requires no man to do a
foolish or a vain thing.   Upon no other principle and upon
no other reason can these rulings be reconciled.

The error, that there must be in every case a judgment
and return of "no property," has resulted from confounding
the cause of action with the evidence by which it is ordina-
rily to be established.   The cause of action springs from the
fact that the debt cannot be made out of the payor, and
when that fact is admitted, as in this case, no evidence is
necessary; but when an issue is made by the assignor upon
the ability of the assignee to make the debt the best evi-
dence of that fact must be adduced, and if the inability
grows out of insolvency, the best evidence of the insolvency
is a judgment and return of "no property."   The object to
be attained by the introduction of evidence is to establish
or to controvert some disputed fact, and when the fact upon
which the right to recover exists is not disputed no evi-
dence is necessary.

It is a familiar rule of pleading that the evidence relied
upon to make out a cause of action or to sustain a defense
should not be pleaded, from which it follows that in an action
by an assignee against an assignor, the allegations should be
confined to the facts that justify a recovery.   As, for in-
stance, in the case of the discharge in bankruptcy of the

payor, it is only necessary or proper to allege the fact of the. adjudication and discharge, and not the evidence by which. it is to be established.   If, however, an issue is made upon these allegations the record evidence of the adjudication and discharge must be adduced because that is the best evidence. So, in the case of a removal to another state after assign- ment of the obligation and before maturity, or of payment before assignment, it is only necessary to allege the fact.

It is not unlike a declaration upon a state of facts that are shown of record.   In such case it is not necessary to set. forth the record evidence, but if issue is taken on the exist- ence of the facts the only competent evidence. is the record..

The rule is broadly laid down in Smallwood v. Woods, 1 Bibb, that a suit is necessary to fix the liability of the. assignor, but on examination of that case it will be found that the question here presented did not arise.   The only question at issue there was of diligence.   The question as. to whether insolvency existing at the date of assignment and continuing would be sufficient to fix liability on the assignor was not considered.   Beside, the opinion in that case, as to. the necessity of a suit to establish the liability of the as- signor, is expressly based upon the case of Boals v. Mc- Connel, Sneed (Ky.), 130, which does not touch the point, and upon Mackie v. Davis, 2 Washington, 281 (Va.), in. which it is expressly said that the only question is, "Can the assignee of a bond maintain an action against the· assignor without a special undertaking by the latter to· insure the payment?"   Mackie v. Davis was followed by the case of Brown v. Ross, 6 Munford, 393, in which the· same judge said: " In the case of the assignment of a note, it is generally necessary for the assignee to sue the drawer in order to charge the indorser.   There are exceptions, how--

·ever, from this rule, two of which are thus stated in the
·opinion of the Husting's court, viz: a discharge under the
former bankrupt laws or the insolvent law of this state.
But these are not the only exceptions.    Another exists
whenever the plaintiff can show to the jury that the drawer
is, in fact, insolvent, whereby a suit would have been wholly
unavailing. ' In this case, like the others, the undertaking
·of the assignee to use due diligence to recover the money
from the drawer is not infringed by the omission to sue, and
·this omission, if objected, may be always answered, on the
part of the assignee, by showing that a suit would have been
fruitless on account of the actual insolvency of the drawer."

To the same effect is Coiner v. Hansbarger, 4 Leigh, 452,
and Smith v. Triplett, 4 Leigh, 590.

The Virginia cases go so far as to admit oral evidence
upon the issue of insolvency, and in considering the weight
to which these cases are entitled it is well'to remember that
our statute making bonds, notes, and bills assignable, so as
to vest the title and the right of action in the assignee, is
·substantially a copy of the Virginia statute.

I will not undertake to review in detail the decisions in
·this state, but confidently express the opinion that no re-
ported case can be found in which the exact question here
presented is passed upon.    In many cases expressions may
be found that appear to indicate that there can be no recourse
unless there has first been suit and return of " no property;"
but, on examination, it will be seen that the question here
presented did not arise.    Such expressions are purely *dicta*
·wherever found.

Upon these questions I cite, in addition to the cases men-
tioned: Clay v. Johnson, 6 Mon., 645; Wood v. Berthoud,
·4 J. J. M., 304; Stapp v. Anderson, 1 A. K. M., 541;

Clair v. Barr, 2 A. K. M., 256; Roberts v. Atwood, 8 B.. M., 210; Emmerson v. Claywell, 14 B. M., 19; Graves v. Tilford, 2 Duvall, 109; Tucker v. Fogle, 7. Bush, 294; Carroll v. Carroll, 16 Howard, 287; Wells' Res Adjudicata. and Stare Decisis, chapters 39 and 40.

Since I prepared and read in consultation the foregoing views in regard to the law of this case I have heard read the opinion of the majority of the court, in which I cannot concur.  What I have already said I propose to let stand without modification, ·but will add, by way of elaboration, some additional suggestions.

The cardinal error in the opinion of the majority of the court grows out of the assumption that the implied obligation resulting from the assignment is, that the assignee will pursue the payor to insolvency *by suit.*  I have already stated that the contract of assignment does not imply such an obligation and that no reported case can be found in which it has been so decided.  The conclusion of the majority of the court upon this point is drawn from *dicta* only. It matters not how often the court may assert the law to be one way or the other, the repetition does not establish the law.  That can only be done in a case where the declaration is in reference to a point directly in issue.  Of course I admit ·that as between parties to an action the rule is different.  Then the party complaining must present his whole case, and any question that might have been made on appeal, or that is incidentally decided, becomes *res adjudicata* as between the parties.  But when we come to consider how far an opinion is the law of the land, in controlling the rights of those not parties to the particular case, the rule is,

·different.  Chief Justice Marshall, in Carroll v. Carroll, 10 Howard, pertinently said:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used.  If they go beyond the case, they may be respected, but ought not to ·control the judgment in a subsequent suit, where the very point is presented."  . . . .  "No opinion can be relied on ·as binding authority unless the case calls for its expression. Its weight of reason must depend on what it contains."

The opinion of the court, to be correct, must be based upon reason or authority—one or both.  That this opinion is not supported by reason, I submit, is clear, nor do I under-·stand the majority of the court to so insist, and that it is not sustained by authority, I have already asserted, and still so insist.  In every case, where the rule insisted upon in the opinion is found, the issue was as to negligence or no negligence, and not as to solvency of the payor or inability ·on the part of the assignee to make the debt out of the payor.

It is suggested in the opinion that that portion of the petition alleging continuing insolvency is demurrable.  In ·order to reach that conclusion, the court assumes the exist-. ence of the very question of law in issue, and that is, whether the law implies from the assignment an undertaking in all ·cases to prosecute to insolvency, or whether the obligation of the assignor is to pay in the event the assignee is unable · · to enforce payment from the payor or maker.  If the assumption of the majority of this court is correct, then nothing will excuse a suit and diligence in its prosecution, ·and what then comes of the exceptions already mentioned?

It has also been suggested that my position leads to an absurdity when I hold that the petition presents a *prima facie* case, and that the assignee is entitled to recover unless its allegations are controverted; but that when controverted, no evidence of the fact of insolvency is competent except execution and return of "no property." It is said I have a cause of action which I am not permitted to prove. In this the error consists, as said in the first part of this opinion, in confounding *the cause of action* with the evidence necessary to establish it. I am permitted to prove my cause of action, but, as in every other case, I must do it by such evidence as the courts have held to be competent. In addition to the case already referred to of an action based on facts provable by record, I may give, in illustration, a suit to recover the possession of land on the ground of title in the plaintiff. The allegation of title and the right of possession, if undenied, is taken as confessed, but if issue is taken upon title or no title, then the question arises as to the character of evidence admissible to establish the claim. Many other illustrations might be given, but the principle that the facts necessary to a recovery must be alleged and not the evidence by which the facts are to be established, if controverted, is too familiar to require discussion.

If there is any defect in the allegation of the petition in regard to insolvency, it is one of form and not of substance, not to be reached by demurrer, but by motion to make more definite, and such a motion not having been made, the defect, if any, is waived. (Posey v. Green, 78 Kentucky.)

I am of the opinion that the judgment should be *affirmed*.