[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 337 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 338 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 339 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 340 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 342 
According to the facts found by the referee, all the defendants were interested in the wheat stored with *Page 344 
Wight Co. Church Ball, as general owners, and Dows Guiteau, as commission merchants, with a lien for their advances and commissions. The more important question in the cause will be, whether Wight Co., the warehousemen, in the delivery of the property which has given rise to this controversy, acted as the agents of the defendants, or of Howes, Godfrey Co., their vendees.
The facts are, that Dows Guiteau, on the 2d of May, 1848, contracted to sell to Howes, Godfrey Co. three thousand and thirty-seven thirty-eight-sixtieths bushels of Genesee wheat at $1.46 per bushel. On the eighth of that month they gave to the vendees the following order:
"Messrs. J. WIGHT Co.,
"Please deliver Messrs. Howes, Godfrey Co. three thousand and thirty-seven thirty-eight-sixtieths bushels of Genesee wheat, from No. 12 Atlantic Dock."
At the time of delivery of this order, Dows Guiteau supposed that the precise quantity of Church Ball's wheat named in the order, was then on storage in store No. 12, above mentioned. Under this order, as the referee reports, there was delivered to the agent of the vendees, about one thousand bushels of the wheat of Church Ball, from loft 2, of store 12, which was all that remained in the possession of the warehousemen, and the measurer was then directed by Wight to measure from loft 1, of store No. 11, at the same buildings, sufficient to fill the order. This wheat was the property of the plaintiff. Messrs. Godfrey Co. paid Dows Guiteau for the quantity of wheat received by them under the order, and the latter accounted with Church Ball, their principals, before notice that the plaintiff's wheat had been taken.
The question of agency above suggested, it seems to me, is determined by a simple statement of the facts. Dows Guiteau had contracted to sell, and of course to deliver, a *Page 345 
quantity of wheat. This obligation they assumed to discharge by the order in question, upon their warehousemen. Wight Co. received the order, assumed to act under it, and consummated the contract of their principals, by the delivery of the quantity prescribed, which was accepted by the vendees in satisfaction and discharge of the engagement of the vendors. Nor is this all. The vendors subsequently recognized the acts of the warehousemen, as performed for their benefit, by receiving the stipulated price for the wheat delivered, as for property sold by them, to Howes, Godfrey Co., and by retaining the money after notice that the wheat taken was in fact the property of the plaintiff. It is true that the defendants supposed that all their wheat was stored in No. 12, and that the quantity there remaining was sufficient to satisfy their contract. They were mistaken, however, in both particulars. The order which they gave under a misapprehension as to the facts, was a direction to a depositary employed by them, for his government, and not for the government of the vendees. The whole duty of the latter was discharged when they delivered the writing to the warehousemen, at their place of business, and he received from them the kind and quantity of property therein specified. They were under no obligation to the defendants to ascertain whether their wheat was in one bin or another. It was the business of the vendors to deliver, and consequently to designate the property. This duty they undertook to perform by an agent. They have availed themselves of his acts to obtain the money of the vendees, and a discharge from their contract, and now seek to repudiate so much of the agency as will enable them to keep the money and defeat this action. This they cannot do. It is established law, that an innocent principal cannot take an advantage resulting from the fraud of one ostensibly acting as his agent, without rendering himself liable, civilly, to the injured party. (Olmstead v. Houghtaling, 1 Hill, 318;Irving v. Motley, 7 Bing., 543.) The case from Bingham cannot, in principle, be distinguished *Page 346 
from the present. There one Dunn had been the purchasing agent of Wellington Co. He was also employed by the defendants to obtain security by a pledge of wool, the property of Wellington Co. He exceeded his authority, and made a fraudulent purchase in the name of that firm, of which his principals (the defendants) were ignorant. TINDAL, Ch. J., remarked, "that the jury acquitted the defendants of fraud, yet they involved them in the legal consequences, as it was a fraud committed by their agent with a view to benefit them." So here, Wight Co. were the agents of the defendants, to make delivery of the wheat sold to Howes, Godfrey Co. The taking of the wheat from No. 11, instead of 12, was an act done under color of their agency, with a view to benefit their principals, by enabling them to fulfill their contract. The defendants received the price of the wheat, as the pledgees did the goods in the case cited, without knowledge of the fraud, and the one retained the goods, and the others proposed to retain the money obtained by the misfeasance of their agents.
It is said, however, that the defendants are not jointly liable for money had and received since Dows Guiteau had accounted with Church Ball for the price of the wheat before notice of the misconduct of the warehousemen. The answer to this objection has already been intimated. All the defendants were interested in the sale made to Howes, Godfrey Co., although the contract was in the names of Dows Guiteau. The money was received on the account of all, and subsequently distributed according to their respective interests: Dows Guiteau retaining so much as would reimburse their advances, charges and commissions; Church Ball receiving the residue. It is enough that the defendants received the money for their joint account. The proportions to which they were, as between themselves, respectively entitled, cannot affect the rights of the plaintiff in this action.
Judgment reversed and new trial ordered. *Page 347