THOMAS CHAMBERS *v.* GEORGE LEWIS, jun. and AUGUSTUS CLEVELAND, executors, &c.

A defendant, setting up in his answer, by way of counter-claim, the liability of the plaintiff as a stockholder, under section 32 of the general manufacturing act, must aver that the plaintiff held an amount of stock in the company equal to the amount of the debt of the defendant for which the plaintiff is sought to be held personally liable.

To constitute a liability on the part of a trustee of a corporation, under section 35 of that act, for a failure to make and publish a report, it is essential to aver, in pleading, that the debt for which he is sought to be made liable was existing at the time the default was made, or that it was contracted afterwards and before the report was published.

To render a trustee liable, under the 46th section of the act, on the ground that he has assented to an increase of the company's indebtedness beyond the amount of its capital, the party seeking to fix a personal liability upon him must allege, in pleading, that such excess of indebtedness was equal to, or exceeded the amount of his debt. It is not sufficient to allege that such excess exceeds the amount of the capital.

Where one claims the ownership and possession of property, actual possession of it by him is not necessary before he can be charged, by the true owner, with the conversion of it. The possession of his agent is his possession; and if, on demand, he refuses to permit his agent to deliver the goods, he is liable for a conversion, the same as if the goods had been in his own possession, and he had refused to deliver them himself.

The title to goods of A., wrongfully sold on execution as the property of B., does not pass to the purchaser, to the exclusion of the title of A. in possession; although the purchaser may have acted in entire good faith.

APPEAL from a judgment of the New York Common Pleas. The action was brought against George Lewis, since deceased, to recover the value of certain barrels of soapstone and redstone, and a quantity of vulcanized gutta percha, alleged to have been the property of the plaintiff, and to have been converted by the defendant. Lewis, the defendant, having died, the action was continued against George Lewis, jun. and Augustus Cleveland, his executors.

The answer denied that the plaintiff owned the articles in question, or that the then defendant had converted them; and averred that certain articles (but whether those in question the defendant did not know) had been left in the store No. 66 Liberty street by the United States Vulcanized Gutta Percha Belting and Packing Co., who were the original owners of the goods; that the store was not the property of the defendant, nor ever had been; and that the goods were still there, and that they had never been appropriated or interfered with by the defendant. That the articles had been sold to the defendant by virtue of an execution under a judgment against the company, and that the defendant was the owner of the same, and entitled to the possession of them, although he has never taken possession thereof. The answer also contained a counter-claim against the plaintiff, as a member, stockholder and director of said company, and seeking to hold him liable on a judgment against the company, assigned to the plaintiff.

The counter-claim was as follows:

"And the said defendant further, and by way of counter-claim to the demand of the plaintiff, says that the said plaintiff is a member, stockholder and trustee of the United States Vulcanized Gutta Percha Belting and Packing Co. above mentioned—a corporation created for manufacturing purposes, under the laws of the state of New York, on or about the 27th day of February, 1857—and was, on the 1st day of February, 1859, and some time prior thereto, the president of said company.

And this defendant, further answering, by way of counter-claim, says, that on the 15th day of March, 1859, a judgment was recovered by the above mentioned Augustus Cleveland, against the said United States Vulcanized Gutta Percha Belting and Packing Co., in the Marine Court of the city of New York, for the rent of the aforesaid store No. 66 Liberty street, due February 1st, 1859, which said judgment was duly docketed with the clerk of the city and county of New York, and execution issued thereon to the sheriff of the city and county of New York; and that said execution has been returned unsatisfied; and that the sum of three hundred and ninety-six dollars and sixty-one cents, with interest from the 15th day of March, 1859, is now actually due thereon; and that said judgment was, on the 2d day of May, 1859, duly asssigned by the said Augustus Cleveland, for a valuable consideration, to this defendant.

And this defendant, further answering, says that he is entitled to recover the amount due on said judgment from the plaintiff, and to counter-claim the same against him for the causes following:

That by the certificate of incorporation of the United States Vulcanized Gutta Percha Belting and Packing Co. aforesaid, filed in the clerk's office of the county of Queens, the capital stock of said company was fixed at one hundred thousand dollars; but that the whole of said capital stock has not been paid in, as this defendant is informed and believes. And the defendant claims and insists that the plaintiff, as stockholder of said company, is thereby rendered liable for the debts of said company, under section 32 of article 2 of title 12 of chapter 18 of part 1 of the revised statutes.

That the said company have neglected, as this defendant is informed and believes, to make and publish, within twenty days from the 1st day of January, 1859, the report required by section 34 of the article of the revised statutes above referred to; and this defendant insists that, by reason of

such neglect, the plaintiff, as a trustee of said company, became, and is, individually liable for the debts thereof.

That the said company, as this defendant is informed and believes, has become indebted to various persons to an amount exceeding the amount of the capital stock of said company, with the consent of said plaintiff. Wherefore, the defendant insists that the plaintiff, as a trustee of said company, by reason of such consent, became, and is, liable for the debts of said company, to the extent of said excess, under section 46 of the said article.

And the defendant claims that, by reason of the premises, the plaintiff is indebted to him in the sum of," &c.

A demurrer to the counter-claim was sustained, on the ground, among others, that the action was in the nature of tort, and that the summons (which was for a money-demand on contract, and was claimed by the defendant's counsel to amount to a waiver of the tort) could not be referred to as determining that the plaintiff had elected to waive the tort, and rely on an implied contract. (10 Abb. Pr. Rep. 206; affirmed, 11 id. 210.)

The facts established on the trial were as follows: The articles in question were originally the property of the company, and by them deposited in the store hired by them from Mr. Cleveland. On the 24th day of December, 1858, they made a general assignment of all their effects to Mr. J. O. Sargent; the plaintiff, who was president of the company, continued to occupy the store as agent of the assignee. The property in question, and other property, was sold at the store, under an execution, January 7, 1859, and the greater part bought in by the plaintiff. The goods still remained in the store, and were left there when the company vacated it, February 1, 1859. On the 30th of March, 1859, the same goods were sold under another execution against the company, and purchased by the defendants' testator, who also left them in the store. The plaintiff subsequently demanded the goods of the defendants' testator, who did not deliver

them, saying that he understood they were the property of the company.

The jury found a verdict for the plaintiff for $724.58. The appeal was on exceptions to the refusal to nonsuit, to the judge's charge, and to his refusal to charge; also from the order sustaining the demurrer to the answer.

*John Pyne* and *Peter Y. Cutler*, for the appellants.

*John T. Hoffman*, for the respondent.

DAVIES, J. It will be most convenient first to examine the correctness of the judgment sustaining the demurrer to the defendant's counter-claim. Assuming that the testator of the defendants was the owner of the judgment, under such circumstances that, if the plaintiff was liable to pay it, it was a legitimate counter-claim upon the facts set forth, it will be necessary to inquire whether the matters so stated in fact show any liability on the part of the plaintiff to pay that judgment. In my opinion, they clearly do not.

By the 32d section of the general manufacturing act,(a) it is provided that all the stockholders of the company shall be severally and individually liable to the creditors of the company, to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of its capital stock is paid in. Now it is not averred in the answer that the plaintiff held an amount of stock in the company equal to the amount of the debt held and owned by the defendants. He was not liable to pay that debt unless he held an amount of stock equal to it, and that is not averred. No amount of stock is alleged to be held by him, nor is the number of shares he held alleged, nor the nominal amount of each share. It is only averred that he was a stockholder, and this averment might well be true if he held one share of stock, to the amount of five dollars; but it would not follow from this that he was liable individ-

(a) 2 R. S. 5th ed. 660.

ually to pay the debt due by the company to the defendants' testator.

In relation to the second ground of counter-claim, the same fatal deficiency of proper and necessary averments is found. By the 35th section of the same act, it is declared that such company shall annually, within twenty days from the first day of January, make and publish a report as therein prescribed; and if the company shall fail to do so, all the trustees of the company shall be jointly and severally liable for all debts of the company then existing, and for all that shall be contracted before such report shall be made. To constitute a liability on the part of the plaintiff under this section, it was essential to have averred that the debt was existing at the time the default was made, or that it was contracted afterwards, and before such report was published. This omission is fatal, and the facts alleged create no liability to pay the debt referred to, on the part of the plaintiff.

The same difficulty arises upon the matters stated in the third ground of counter-claim. By the 46th section of said act, it is declared that if the indebtedness of any such company shall at any time exceed the amount of the capital stock, the trustees of such company assenting thereto shall be jointly and individually liable for such indebtedness to the creditors of the company. It is not stated in the answer what excess of indebtedness has been incurred over and above the capital stock. It is said to be an amount exceeding the capital stock. It may be only one dollar, and the averment of the complaint be satisfied. If the defendant had desired to make the plaintiff liable for his debt, it was incumbent on him to have averred that such excess was equal to, or exceeded the amount of his debt. The plaintiff was liable, as is truly stated in the complaint, only to the extent of such excess; but clearly he was not indebted to the defendant in the amount of his judgment, if such excess did not equal or exceed the amount thereof.

The judgment of the Common Pleas, sustaining the demurrer to the counter-claim, was clearly correct.

It remains to inquire whether there was any error in the refusal to charge, and in the charge as made. The first request to charge assumes that there can be no conversion, unless the party is in the actual possession of the goods at the time of the demand and refusal. The possession of the agent of the defendant was his possession; and the conversion was equally as effective by his refusal to permit his agent to deliver the goods, as if they had been in his actual possession, and he had refused to deliver them himself. The defendant in his answer claimed to be the owner of the goods, and entitled to the possession thereof. In *Cobb* v. *Dows*, (10 N. Y. Rep. 335,) the question was, whether the defendants had been guilty of a conversion of a quantity of wheat. It is said, in the opinion delivered in the Supreme Court, that if they had taken it into their own hands, or disposed of it to others, or exercised any dominion over it whatever, they were guilty of the conversion, and their liability to the plaintiff was established; and this court held, if they availed themselves of the act of their agent, who refused to deliver the wheat, it was a conversion on their part. In this case, the defendant claimed the ownership and possession of the property; and actual possession of it by him was not necessary before he could be charged with the conversion of it.

The second request to charge has no soundness in it. It was of no importance whatever whether the defendant had acted *bona fide* in making the purchase by himself at the sale on the 30th of March. The question was, whether the plaintiff had a better and prior title to the property, and this fact was to be determined without any reference whatever to the conduct or motives of the defendants in purchasing the same property at the subsequent sale on the 30th of March. The plaintiff, on a sale upon one execution, issued upon a judgment against the said company, docketed on the 2d of December, 1858, became the purchaser of the goods, and

paid to the sheriff making the sale the amount of his bid, and took possession of the property thus sold. This sale was made on the 7th of January, 1859, and the property remained in the same store, and was still there at the time of the demand made by the plaintiff. The company had made an assignment on the 24th of December, 1858, and after such assignment the assignee took possession of the store, and continued such possession until February 1, 1859. On that day Mr. McMartin took possession of the store, and with his assent the goods of the plaintiff were carried there, and were there at the time of the sale to the defendant, who requested the witness to keep the possession of them, and he refused to give them up.

The judge charged the jury, to which the defendant excepted, that if the property purchased by the plaintiff at the sheriff's sale was the same property afterwards purchased by the defendants, and which was left in McMartin's possession, the plaintiff, in virtue of such prior sale, was the owner. This proposition left fairly to the jury the question whether the property purchased by the plaintiff and that purchased and claimed by the defendants was identically the same. The jury found that they were, and that disposes entirely of that question. I find no difficulty in sustaining the other portion of the charge. It was a conceded fact that the goods originally belonged to the company; that a valid and regular judgment was recovered against it; and that an execution was issued upon it, by virtue whereof the goods were levied upon and sold, and the plaintiff became the purchaser, and paid to the sheriff the amount of his bid. The plaintiff testified that he immediately took possession thereof; and if it can be argued that the company had still the possession thereof, by reason of its occupancy of the store up to the 1st of February, that occupancy ceased on that day, and any possible presumption of possession of the goods by the company then ceased. The judgment under which the defendant claimed was not recovered till the 15th of March,

at which time, beyond all question, the goods were in the possession of the plaintiff or his agent. There was no error, therefore, in this part of the charge.

The other portion of the charge is unquestionably correct. If the jury found the facts as stated by the court, no doubt remains of a conversion by the defendant. If he had not intended to enforce his rights, which he deemed he acquired by the sale, when the demand was made on him for the goods he would naturally have disclaimed any right or title to them. His conduct then, and his claim in his answer to be the owner of the goods and entitled to the possession, coupled with the facts found by the jury, remove all doubts of the conversion of them made by him.

The judgment should be affirmed, with costs.

BALCOM, J. dissenting. The counter-claim set up in the answer was not a cause of action arising out of the transaction set forth in the complaint as the foundation of the claim, or connected with the subject of the action. Hence the demurrer to the same was properly sustained. (Code, § 150.) It was also properly sustained, for the reason that the counter-claim did not belong to the original defendant in the action at the time the same was commenced. (*Rice* v. *O'Connor*, 10 Abbott's Pr. Rep. 362; *Gage* v. *Angell*, 8 How. Pr. Rep. 335; *Van Valen* v. *Lapham*, 13 id. 240; *Pattison* v. *Richards*, 22 Barb. 143.)

The judge properly refused to nonsuit the plaintiff. There plainly was sufficient evidence to require the judge to submit to the jury the question whether the defendant Lewis had converted the goods. It also justified the judge in refusing to charge the jury that unless they found the goods to have been in the actual possession of the defendant at the time of the alleged demand and refusal, such demand and refusal would not authorize them to find a conversion by the defendant.

I am also of the opinion that the judge properly refused

to charge the jury that if they found there was a *bona fide* purchase by the defendant at the sheriff's sale they should find a verdict for the defendant. A verdict for the defendant would have been erroneous, unless the jury had found that the plaintiff's title was fraudulent against the defendant's purchase; and the judge was not asked to submit that question to them. It was not so clearly fraudulent, if fraudulent in fact, as to have justified the judge in holding that as matter of law it was fraudulent. He must have so held if he had authorized the jury to render a verdict for the defendant if they found he was a *bona fide* purchaser of the goods.

All that the judge charged the jury respecting the demands and refusals, was, that such demands and refusals were "evidence of a conversion" by the defendant. He did not charge that those acts were conclusive evidence of a conversion; and, as I understand the charge, he submitted to the jury the question whether the evidence established a conversion by the defendant. This was correct.

But I am constrained to say I think the judge erred in charging the jury "that if the property purchased by the plaintiff at the sheriff's sale was the same property afterwards purchased by the defendant, and which was left in McMartin's possession, the plaintiff, in virtue of such prior sale, was the owner." The plaintiff was not in the actual possession of the goods at the time the defendant purchased them and assumed to control them. He could only show that he was entitled to the possession, by proof that he owned them. And the evidence established that they were assigned by the defendants in the executions to Sargent on the 24th day of December, 1858, which was before either party to the action purchased them; and no evidence was given to show that Sargent's title was not good as against the plaintiff. The judge ignored this fact when he told the jury they might find the plaintiff owned the goods, if they found the goods were those purchased by him at the sheriff's sale. It seems to me the plaintiff should have shown that

Sargent did not acquire any title to the goods under the assignment of the company to him on the 24th day of December, 1858, before he could claim that he obtained title to the same by his purchase under the execution against the company on the 7th day of January, 1859.

I am also of the opinion that this part of the charge was erroneous, for the reason that it prevented the jury from determining whether the plaintiff's title was not fraudulent as against the judgment and execution under which Lewis purchased. If the assignment of the 24th of December, 1858, was a nullity, the store in which the goods were must be deemed to have been in the possession of the company until the 1st day of February thereafter, which was twenty-four days after the plaintiff purchased the goods. The plaintiff was a member of the company, and had been its president; and when it was claimed that Sargent was in possession of the store, as assignee of the company, the plaintiff was there as his agent. It can not be said that the plaintiff's purchase of the goods was accompanied by an immediate delivery thereof to him, and followed by an actual and continued change of possession. They remained in the same store in which the company deposited them, until they were seized by the execution creditor of the company, under whose process the defendant purchased the same. I think the true rule is, that the continuance of possession by a defendant, after the sale of his property under an execution, is *prima facie* evidence of fraud, as well where the property is bid in by a third person as where it is struck off to the plaintiff in the execution. The Supreme Court so held in *Fonda* v. *Gross*, (15 Wend. 628;) and that court decided, in *Gardenier* v. *Tubbs*, (21 id. 169,) that where property is bought at a sheriff's sale by the plaintiff in an execution, and left in the possession of the defendant, without any good excuse shown, the sale is void as against the creditors of the defendant, notwithstanding that the plaintiff subsequently, and before the levying of an execution on the part of other creditors,

reduces the property to his actual possession.　But as the rule now is, the judge could not have pronounced the plaintiff's title fraudulent as against the creditors of the company, under whose execution the defendant purchased the goods; but he should have submitted the question to the jury, whether the plaintiff's title was not fraudulent as against that creditor and the defendant.　(2 R. S. 137, § 4; *Gardner* v. *McEwen*, 19 N. Y. 123.)

For the error in the charge of the judge to the jury, the judgment of the court of Common Pleas should be reversed, and a new trial granted, costs to abide the event.

DENIO, Ch. J. and ROSEKRANS, J. expressed no opinion.

Judgment affirmed.