### Knapp and another vs. White and another.

FRAUDULENT SALE: ESTOPPEL. *What facts estop creditor from attacking debtor's sale as fraudulent.*

1. The facts that after a sale of property the vendee became surety on the vendor's note for a debt existing prior to such sale, and that the creditor subsequently relinquished such suretyship and permitted the vendor to become again his sole debtor, do not estop the creditor from impeaching such sale as fraudulent; it not appearing that his acceptance or relinquishment of the vendee's suretyship had any reference to the validity of the sale.
2. Where a sheriff levied an execution in favor of A. on goods as the property of X., and sold them upon such levy, delivering them to the purchaser at such sale, he had no authority, while the goods were in his possession under the first named levy, to levy the execution of B. upon the same goods as the property of Y., and his sale of them upon such second levy (without delivery to the purchaser) was void.
3. In replevin by the purchaser at such void sale against the purchaser at the former sale, plaintiff having no title, the question whether a pretended sale of the goods from Y. to X. was fraudulent as to creditors, is immaterial.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, by *Charles* and *Sheldon Knapp* against *Adelaide White* and *Wm. White, Sen.* The complaint avers that, on the 26th of March, 1873, plaintiffs purchased the property at a sheriff's sale, made under an execution upon a judgment in their favor, in an action wherein they were plaintiffs and *Wm. White, Sen.*, was defendant; that at the time of the levy of said execution, the property belonged exclusively to *White, Sen.*, and no other person had any interest therein; that the sheriff claimed to have an execution in his hands issued out of the Winnebago county court, in an action wherein *Adelaide White* was plaintiff, and Wm. White, Jr., defendant, and at the same time and place of the sale to these plaintiffs, sold the interest of said Wm. White, Jr., to said *Adelaide White*, and afterwards delivered the same to said *Wm. White, Sen.*, as the pretended agent of *Adelaide*, and that the same was in his possession at the commencement of this action; that the said Wm. White, Jr., never had any interest in the property; and that defendant *Adelaide* was the wife of *Wm. White, Sen.*

The answer alleges that the property was, at the time of the execution sale, the property of Wm. White, Jr., and that *Adelaide* owns the same by virtue of such purchase; that, previous to the levy under the *Knapps'* execution, it had been levied upon by the sheriff by virtue of a writ of attachment in the action of *Adelaide White v. Wm. White, Jr.*, as the property of Wm. White, Jr.

On the trial, the plaintiffs offered in evidence the judgment roll in *Knapps v. White, Sen.*, the execution issued thereon, and the officer's return, and proved by the deputy sheriff, who made the levy, that the property (which consisted of horses, harness, buggies, sleighs, etc., pertaining to a livery stable in Winneconne) was, at the time of levy, in the possession of *White, Sen.*, and that he claimed his exemptions from the property in the stable, which were set off. On cross examination, he testified that he had, previous to the levy on the

*Knapps'* execution, made a levy under a writ of attachment in the suit of *Adelaide White v. Wm. White, Jr.*, and by *Adelaide's* direction had left the property in the possession of *White, Sen.*, until the execution sales. The plaintiffs then proved demand of *Adelaide*, and rested. A motion for a nonsuit, on the ground that plaintiffs had not shown title to the property, nor right of possession, was denied.

Wm. White, Jr., as a witness for defendants, testified that, on the 9th of December, 1871, he purchased the stock in the livery stable, including the property in question, from his father, *White, Sen.*, for $2,000; that he paid $90 in cash and numerous small debts of his father; that he assumed an indebtedness of $750 claimed to be owing from *White, Sen.*, to *Adelaide*, his wife, and gave her his note therefor. It appeared that on this note the judgment in the suit of *Adelaide White v. Wm White, Jr.*, was obtained. It further appeared from his testimony, and from testimony offered by the plaintiffs, that at the time of the sale in December, 1871, *White, Sen.*, was, and for some time had been, indebted to the *Knapps;* that soon after his alleged purchase, *White, Sen.*, and White, Jr., had both signed and given to the *Knapps* a note for the preëxisting indebtedness of *White, Sen.*, to them; that after this note matured, the *Knapps* arranged with the makers for a renewal thereof; that *White, Sen.*, signed such renewal note, and the former note was thereupon given up and destroyed, and thereafter White, Jr., refused to sign the renewal note, in violation of his and his father's agreement. The *Knapps*, as rebutting evidence, testified that they did not know of the sale from *White, Sen.*, to White, Jr., until after they had given up the first note.

Considerable testimony was given in relation to the possession of the property since the alleged transfer from the father to the son, and to the amounts paid by the son of the father's debts; and plaintiffs then offered to prove that the livery stock, after the alleged transfer, remained in the custody of

*White, Sen.*, in the barn owned by him, and that he attended to the business in which the same was used, and paid the bills for repairs and supplies out of the proceeds; and, generally, to prove that the sale was made in fraud of the *Knapps*. The evidence was rejected on the ground that plaintiffs were not in a position to attack the sale; that when they took the note of the two Whites, they had the liability of both parties, and the sale did not affect their rights or remedies; and that, having taken security not only of the vendor, the original debtor, but also of the purchaser of the property, they were estopped from attacking the sale as fraudulent. Proof was then taken of the value of the property and the damages for detention. Plaintiffs offered to prove that the sale to Wm. White, Jr., was in fraud of creditors, and that the note given to *Adelaide White* was without consideration, and given through collusion between *White, Sen.*, White, Jr., and *Adelaide*, to defraud the plaintiffs.

The evidence was rejected; the jury, by direction of the court, found a verdict in favor of the defendants, for the value of the property and damages for its detention; and plaintiffs appealed from a judgment on the verdict.

The cause was first submitted on briefs at the January term, 1875.

*Moses Hooper*, for appellants, argued that the creditors were not estopped from attacking the sale as fraudulent, as they did not know of it when they took the vendee as surety; and as the vendee by fraud procured his discharge, the creditor being still ignorant of the pretended sale. *Norton v. Norton*, 5 Cush., 524. Even though they had known the sale to be fraudulent when they took White, Jr., as surety, they might still impeach it for the fraud. *Waterhouse v. Benton*, 5 Day, 136; *Barney v. Cutler*, 1 Root, 489. A purchaser at execution sale may attack a prior sale, made before judgment, as fraudulent. *Eastman v. Schettler*, 13 Wis., 324. Conveyances are held fraudulent as to creditors whose claims

accrue subsequently to the pretended sale. *Churchill v. Wells*, 7 Coldw., 364; *McLane v. Johnson*, 43 Vt., 48; *Clark v. French*, 10 Shep. (Me.), 221; *McConihe v. Sawyer*, 12 N. H., 396; *Damon v. Bryant*, 2 Pick., 411.

*Felker & Weisbrod*, for respondents, contended that the *Knapps*, by taking the obligation of the vendor and vendee, had assented to the sale, and could not attack it as void, citing *French v. Mehan*, 56 Pa. St., 286; *Rapalee v. Stewart*, 27 N. Y., 310; *Richards v. White*, 7 Minn., 345; *Baker v. Gilman*, 52 Barb., 26; *Carter v. Smith*, 23 Wis., 497. By taking the note of the vendor and vendee for the claim against *White, Sen.*, and adding to it the *bonus* for extension, they blended prior and subsequent demands, and are therefore only subsequent creditors. *Reed v. Woodman*, 4 Greenl., 400; *Baker v. Gilman, supra*.

The following opinion was filed at the January term, 1875.

RYAN, C. J. The appellants were creditors at large of the respondent *William White, Sen.*, long before the sale of the latter to William White, Jr., and so remained until they became judgment creditors for the same debt. During most of that time, the respondent *White, Sen.*, was their sole debtor. For some time in 1872, after the sale, White, Jr., was a joint debtor with him to the appellants, by being his surety on a note for the debt. But, during that time, as well as before and after, the appellants were creditors of the the respondent *White, Sen.*, for the whole debt. The suretyship of another for him in no way affected his liability. And, as the appellants were thus continuously creditors of the respondent *White, Sen.*, before and at the time of his sale to White, Jr., for the debt on which they finally recovered their judgment, they are in a position to attack the sale as fraudulent against creditors, whether subsequent creditors could do so or not.

And the fact that, after the sale, the vendee, White, Jr.,

joined the vendor, the respondent *White, Sen*, in an obliga-tion to the appellants, afterwards relinquished, for the debt, cannot work any estoppel upon them from impeaching the sale for fraud.  We are quite unable to perceive any tendency in the taking or in the relinquishment by the appellants, of the liability of the vendee as surety for the vendor for their debt, to operate as affirmance or assent to the sale.  We see nothing in the case to give such a color to the fact, and we can see nothing in the fact itself to give it such effect.  A creditor may take or relinquish the suretyship for his debtor, of one who is a fraudulent vendee or trustee of the debtor, without, under ordinary circumstances, ratifying the fraudu-lent sale, or releasing the fraudulent trustee, or relinquishing the right to pursue the property fraudulently transferred to hinder creditors.  Doubtless he may do so, in special circum-stances or under special conditions, so as to work a ratification or an estoppel.  But the mere fact that he accepts and relin-quishes the suretyship of the vendee or trustee has, of itself, no such effect: has no apparent bearing, in any way, upon the sale alleged to be fraudulent.  While the vendor and vendee were jointly liable to the appellants, the question of the valid-ity of the sale might have lost practical consequence; but the right to question the sale was not merged in the suretyship of the vendee.  A less right merges in a greater, only when both have a common object or relation.  Here, if the liability were joint and several, the appellants might have had judg-ment against the vendor only, and attacked the sale to the vendee for fraud: so, if the vendee were beyond the reach of process: so, if the vendee had died: so, if the vendee had again sold to one chargeable with notice of the fraud.  And when the vendor again became the sole debtor of the appellants, the fact that the vendee had been and had ceased to be liable for the debt of the vendor, appears to us to have no bearing on the validity of the sale.  The surrender of the vendee's sure-tyship for the vendor in no way affects his title under the sale,

Knapp and another vs. White and another.

when impeached for fraud.   His relations to the appellants as surety, and as vendee under a sale charged with fraud, are in no sense akin; and the cessation of one has no effect on the other.   His suretyship appears to have been accepted and relinquished without any reference to the sale, and has no connection with it.

The cases of estoppel founded on acquiescence in the sale impeached for fraud, or on the acceptance of benefits under it, or on the fact that the creditor was the actual vendor himself, cited by the respondents, do not appear to us to have any application to the facts appearing in this record.

The court below held the appellants to be estopped to impeach the sale, excluded evidence tending to impeach it and took the question of fraud in it from the jury.   In our view, this was error fatal to the judgment, if the appellants on the trial showed title in themselves to the property in dispute. But on this point, not raised in the argument of counsel, we entertain grave doubt, and we desire to have it argued before deciding the appeal.

It appears that the sheriff first levied on the goods in question on an execution in favor of the respondent *Adelaide* against White, Jr., and then on an execution in favor of the appellants against the respondent *White, Sen.;* that, having the goods in his possession, he sold them separately, on each of the executions, at the same time and place; to the respondent *Adelaide* on the former execution, and to the appellants on the latter; and that he delivered the goods to the respondent *Adelaide*, as purchaser, probably before the sale to the appellants.

We do not think it proper to discuss our doubts, in advance of the argument, beyond the mere statement that we do not understand how the sheriff could hold possession of the goods, at the same time, as the property of one person on one execution, and as the property of another person on another execution; and make separate valid sales of them, at the same time,

to different purchasers, for different prices, on different titles; of necessity making delivery only to one; so as to vest a title in the purchaser to whom he made no delivery. And we desire to have it argued by counsel, whether the sheriff's sale to the appellants, in the circumstances, vested in them a title to the goods, which they can assert in this action; assuming the sale from the respondent *White, Sen.,* to White, Jr., to have been fraudulent and void as against the appellants.

The cause will therefore be continued for the term, to be argued hereafter on the point now reserved, only.

And, before it will be heard, the appellants must print and serve a new case. The case presented at this term was printed in disregard of the rule, and was an abuse of the time and convenience of the court. As much of the bill of exceptions, itself defective with all its extravagant length, as was necessary to the intelligent discussion and decision of the questions involved in the appeal, might well have been presented in some half dozen pages of printed case, instead of the wilderness of 393 folios of type, through which we had to wander, and from which we could escape only to the manuscript record, as a choice of evils. That case cannot be again used in this court, and the cost of printing it should not, in any event, be taxed in the costs of the appeal.

*By the Court.* — Let an order be entered in conformity with this opinion.

A new printed case having been served and filed, the cause was again submitted on briefs at the January term, 1876.

*Moses Hooper*, for appellants:

It appears that the sheriff actually levied upon and sold to *Adelaide White* nothing but the interest of White, Jr., in the property. *True v. Congdon,* 44 N. H., 48; Rorer on Jud. Sales, § 1055. By virtue of the sale to plaintiffs upon the execution against *White, Sen.,* they obtained all the title and interest of the latter in the property, unless this result was

prevented by the delivery of the property by the sheriff to *Adelaide White*, upon the sale to her. But a sale is complete when the parties have agreed and the money has been paid and received; and the property, then passes to the vendee, whether there is a delivery or not. 1 Parsons on Con. (5th ed.), 525–553; *Sewell v. Eaton*, 6 Wis., 490; *Sanborn v. Hunt*, 10 id., 436; *Congar v. Railway Co.*, 17 id., 477; 4 Mich., 238. If the goods had not been sold to *Adelaide*, but, after the sale to plaintiffs and payment by them, without delivery made, possession of the goods had been taken by a stranger, without actual title or right of possession, could not plaintiffs have maintained replevin for them? If the sheriff sells the goods of A. upon on execution against B., the purchaser gets no title. *Bryant v. Whitcher*, 52 N. H., 159; *Smith v. Montgomery*, 5 Iowa, 370; *Symonds v. Hall*, 37 Me., 354; *Chambers v. Lewis*, 28 N. Y., 454; *Carter v. Simpson*, 5 Johns., 535; *Paxton v. Freeman*, 6 J. J. Marsh., 234. It may be that in the case first cited the court merely holds that the purchaser obtains no title *as against A.* But if, while the goods are in the officer's possession under the execution against B., A. sells, in good faith and for value, to C., does not C. become vested with A.'s rights, and can he not maintain replevin for the goods as against the purchaser at the execution sale? And if, instead of A. selling his interest and right of action in the goods, they are levied upon and sold to C. under an execution against A., C. still obtains all the right, title and interest of A. therein. *Griffith v. Fowler*, 18 Vt., 390; *Sanborn v. Kittredge*, 20 id., 632; *Rakestraw v. Hamilton*, 14 Iowa, 147; *Popelston v. Skinner*, 4 Dev. & Batt., 156; *McGhee v. Ellis*, 4 Litt., 244; *Austin v. Tilden*, 14 Vt., 325; *True v. Congdon, supra;* Rorer, §§ 1051, 1055. He can therefore maintain replevin for them.

*Felker & Weisbrod*, for respondents:

It is clear from the evidence that the levy on the execution against White, Jr., and the sale thereon to *Adelaide*

*White*, were each prior to the levy and the sale, respectively, under which plaintiffs claim. This being so, plaintiffs did not acquire any title by the execution sale to them. The lien of an execution is lost if the officer, after levy, suffers the property to remain with the debtor as his own, or voluntarily permits the debtor to regain possession thereof. *Barnes v. Billington*, 1 Wash. C. C., 29; *Wilson v. Hensley*, 4 Ired. Law, 66; *Knower v. Barnard*, 5 Hill, 377; *Camp v. Chamberlain*, 5 Denio, 198. This must be on the principle that the abandonment, surrender or transfer of the property by the officer ends the lien created by the levy. If so, why was not the sale and delivery of the property to *Adelaide White* such a surrender or abandonment of possession by the officer as to defeat the levy and sale under the other execution? It may be that the officer could have retaken it under plaintiffs' execution, and then made a valid sale; but no such retaking is claimed here. The fact, if it be such, that *Adelaide White* acquired no title by the sale to her, does not help the plaintiffs. But she obtained a *prima facie* title by possession, which is superior to any which they can show. In support of these views counsel cited Herman on Ex., ch. 8, §§ 158, 172, ch. 9, § 182, and ch. 11, § 211; *Cochran v. Roundtree*, 3 Strob., 217; *Davidson v. Waldron*, 31 Ill., 120; *Cooley v. Harper*, 4 Ind., 454; *Border v. Benge*, 12 Iowa, 330; *Barham v. Massey*, 5 Ired. Law, 192; *Allen v. Scurry*, 1 Yerg., 36; *Wheeler v. Nichols*, 32 Me., 233; *Leach v. Pine*, 41 Ill., 66; *Davidson v. Waldron*, 31 id., 120; *Newman v. Hook*, 37 Mo., 207.

RYAN, C. J. In the former opinion on this appeal, we said that we did not understand how the sheriff could hold possession of the goods, at the same time, as the property of one person on one execution, and as the property of another person on another execution; and make separate, valid sales of them, at the same time, to different purchasers, for different prices, on different titles; of necessity making delivery only

to one; so as to vest a title in the purchaser to whom he made no delivery. After reargument on that point, we are still wholly unable to understand it.

When a sheriff levies an execution upon goods as the property of a judgment debtor, they are, as such, *in custodia legis*, and he is vested with a special property in them, in right of the execution. *Martin v. Watson*, 8 Wis., 315; Herman's Exec., §§ 172, 173. If, after levy, the sheriff discover that the goods are not the property of the judgment debtor, he may, at his peril of the fact, relinquish the levy and possession of the goods. *State v. Swigart*, 22 Ark., 528; Herman, § 159. But, so long as the sheriff adheres to the levy and retains possession under it, his special property and possession can be divested only by legal process or proceeding against him, in right of an adverse title. He cannot himself, retaining his levy and possession against one judgment debtor, levy another execution against another judgment debtor, on the same goods; and so become vested with conflicting special titles, in adverse rights. The law sanctions no such anomaly. The sheriff levies at his peril of the judgment debtor's title; and cannot be tolerated to assert his possession of goods, as *in custodia legis*, as of different adverse owners. See *Booth v. Ableman*, 16 Wis., 460. So far as we know, this is the first time such a feat has been attempted.

Having first levied the respondent *Adelaide's* execution on the goods in controversy, as the property of White, Jr., and adhered to that levy until he sold and delivered the property to her as purchaser at his sale on her execution, the sheriff was outside of his duty and authority in levying the appellant's execution against *White, Sen.*, on the same goods; and his sale to them was void, vesting no title in them.

The appellants therefore failed in proof of title, essential to their recovery in replevin. And the title of White, Jr., and the question of fraud in the sale of *White, Sen.*, to White, Jr., were immaterial on the trial.

The judgment of the court below is therefore affirmed.
*By the Court.* — Judgment affirmed.